The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Nathan Michael ORTIZ, Defendant–Appellant.

No. 04CA1154.

Colorado Court of Appeals, Div. I.

Oct. 19, 2006.

John W. Suthers, Attorney General, Wendy J. Ritz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MÁRQUEZ.

Defendant, Nathan Michael Ortiz, appeals the judgment of conviction entered upon jury verdicts finding him guilty of reckless endangerment, second degree assault, second degree kidnapping, false imprisonment, child abuse, and two counts of third degree assault. We affirm.

## I.

■ Defendant argues that the evidence is insufficient to support the jury's verdicts finding him guilty of second degree kidnapping and child abuse. We disagree.

As relevant here, the statute defining second degree kidnapping provides as follows: "Any person who takes, entices, or decoys away any child not his own under the age of eighteen years with intent to keep or conceal the child from his parent or guardian ... commits second degree kidnapping." Section 18–3–302(2), C.R.S.2006.

Section 18–6–401(1)(a), C.R.S.2006, defining child abuse, provides: "A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health...." "Where no death or injury results ... [a]n act of child abuse when a person acts knowingly or recklessly is a class 2 misdemeanor." Section 18–6–401(7)(b)(I), C.R.S.2006.

■ In assessing the sufficiency of the evidence supporting the jury's verdicts finding defendant guilty of violating these provisions, we must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

At trial, the victim, a young woman who had previously been involved in a relationship with defendant, testified that, on the evening in question, defendant arrived at her house unannounced, and she invited him in. After the victim finished putting her four-year-old son to bed, defendant asked her whether he could stay for the night. When the victim asked defendant to leave, he became enraged and attacked her.

Defendant grabbed the victim by the hair, pulled her down a flight of stairs, threatened to kill her, choked her, punched her in the face, bit her cheek and neck, pulled out a clump of her hair, and repeatedly struck her with a baseball bat.

The victim managed to escape and ran into the backyard screaming for help. While in the backyard, the victim heard her son yelling for help from the front yard. The victim ran to the front of the house and saw her son in the passenger seat of a vehicle. Defendant was in the driver's seat.

The victim opened the passenger-side door of the vehicle and tried to pull her son out. She was not able to do so because defendant was holding the boy by the arm.

Defendant started the engine and accelerated in reverse gear, causing the passenger-side door to strike the victim. Defendant drove away from the area with the victim's son still in the car.

Defendant's sister testified that, on the night in question, defendant ran into her yard and told her he had done "something bad." Defendant was not wearing a shirt, and his sister could see that he had blood on his person. Defendant told his sister to retrieve the victim's son from a car parked "down the block." Defendant then fled on foot.

Defendant's sister walked to the end of her block and found the vehicle; the doors were locked, and the key was in the ignition. The victim's son was inside the vehicle, clad only in his underwear. The time was approximately 12:30 a.m.

Defendant's sister persuaded the victim's son to unlock one of the doors. She then took the boy back to her house, where she dressed him and tried, unsuccessfully, to reach his mother by telephone. As defendant's sister was driving toward the victim's home to return the child, she was stopped by the police, who took custody of the child.

Contrary to defendant's assumption, the plain language of § 18–3–302(2) does not require proof that a child be taken for any particular duration in order to show that the actor had the "intent to keep or conceal the child from his parent or guardian." *See People v. Woodward,* 631 P.2d 1188, 1190 (Colo. App.1981)(the child kidnapping statute prohibits unauthorized interference with parents' custodial right to a child; such interference may be effected by keeping the child in physical seclusion or by keeping accurate information regarding the child's location from his parents, thus making it more difficult for the child's parents to discover the child's location). Here, the evidence proving that defendant violently took the child from the victim without telling her where he was going is sufficient to sustain the jury's verdict, irrespective of the fact that defendant's sister later attempted to return the child to the victim.

Nor are we persuaded by defendant's claim that he did not recklessly place the victim's son in a situation that posed a threat of injury to the child's life or health.

By abandoning a four-year-old child in a vehicle in the middle of the night, with the key still in the ignition, defendant exposed the child to numerous perils. Among other things, the child could have been injured by others, injured himself, suffered from exposure, or wandered off in search of his mother. Although defendant asked his sister to retrieve the child, he did not specify the precise location where the child could be found.

Accordingly, we conclude the foregoing evidence, when viewed using the applicable standards, establishes all the elements of second degree kidnapping and child abuse.

## II.

■ Defendant next argues that the trial court abused its discretion and violated his due process right to a fair trial by admitting photographs of his torso, taken at the time of his arrest, which depicted a tattoo of the letters "N S M"—an acronym for the "North Side Mafia" street gang. We are not persuaded.

" 'Relevant' evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

■ Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. However, "[t]he Colorado Rules of Evidence strongly favor the admission of material evidence, and a trial court has substantial discretion in deciding questions concerning the admissibility of evidence." *People v. Agado,* 964 P.2d 565, 567 (Colo.App. 1998) (citation omitted). In reviewing the trial court's exercise of its discretion, we consider the maximum probative value of the evidence and the minimum unfair prejudice. *People v. Gibbens,* 905 P.2d 604 (Colo.1995).

■ To constitute an abuse of discretion, the trial court's evidentiary ruling must be shown to be manifestly arbitrary, unreasonable, or unfair. *People v. Martinez,* 83 P.3d 1174, 1179 (Colo.App.2003).

Here, the trial court overruled defendant's objection to admission of the unredacted photographs and agreed with the prosecution

that, because defendant was relying on the affirmative defense of self-defense, the photographs of defendant's entire torso were relevant to show that he had sustained only minor scratches. However, to prevent unfair prejudice to defendant, the trial court prohibited the prosecution from introducing any evidence relating to defendant's participation in a gang.

We see no abuse of discretion in the trial court's ruling. Defendant's tattoo did not explicitly refer to a street gang, and no evidence was introduced concerning defendant's membership in a gang. Likewise, no evidence was introduced suggesting that this offense was gang related.

### III.

▪ Finally, defendant argues that the trial court erred by submitting the offense of false imprisonment to the jury as a lesser nonincluded offense of second degree kidnapping, rather than as a lesser-included offense. We disagree.

▪ Pursuant to § 18–1–408(5)(a), C.R.S. 2006, a lesser offense is included in a greater offense when the lesser offense is established by proof of the same or less than all the facts required to establish the commission of the greater offense. This standard has been variously referred to as the "strict elements test," "the statutory elements test," and the "*Blockburger* test." *People v. Abiodun*, 111 P.3d 462 (Colo.2005); *Meads v. People*, 78 P.3d 290 (Colo.2003); *People v. Leske*, 957 P.2d 1030 (Colo.1998). Thus, if proof of facts establishing the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense, the lesser offense is included for purposes of § 18–1–408(5)(a). However, if the lesser offense necessarily requires proof of at least one additional fact that the greater offense does not, it is not included in the greater offense. *Meads v. People, supra.*

As set forth above, "[a]ny person who takes, entices, or decoys away any child not his own under the age of eighteen years with intent to keep or conceal the child from his parent or guardian ... commits second degree kidnapping." Section 18–3–302(2).

By contrast, a person commits false imprisonment if, subject to an exception not applicable here, the person "knowingly confines or detains another without the other's consent and without proper legal authority." Section 18–3–303(1), C.R.S.2006.

As defendant concedes, the offense of false imprisonment contains an element that is not contained in the definition of second degree kidnapping of a child, namely, the absence of consent. However, defendant argues that this facial distinction is not dispositive because *Patton v. People*, 35 P.3d 124, 128–29 (Colo.2001), and *People v. MacBlane*, 952 P.2d 824, 827 (Colo.App.1997), demonstrate that a court analyzing two offenses under the strict elements test must conduct a logical comparison of the elements, not merely a linguistic comparison. *See Patton v. People, supra* (possession of methamphetamine in the course of its manufacture is a lesser-included offense of manufacture of methamphetamine because logic dictates that one who manufactures a controlled substance must also possess it); *People v. MacBlane, supra* (offense of second degree criminal trespass was included within offense of second degree burglary, thus precluding conviction on the lesser trespass offense, whether issue was analyzed under common law or statutory concepts of merger, or under principles of double jeopardy; concepts of "building" and "occupied structure," within meaning of burglary statute, necessarily included those facilities that were "enclosed in a manner designed to exclude intruders," within meaning of trespass statute).

Building on this premise, defendant calls our attention to *People v. Haynie*, 826 P.2d 371, 373 (Colo.App.1991), in which a division of this court interpreting § 18–3–302(1), C.R.S.2006 (second degree kidnapping committed by seizing and carrying a person without consent or lawful justification), held as follows: "[W]e are instructed by *Armendariz v. People*, 711 P.2d 1268 (Colo.1986), [that] a minor child cannot consent to being taken by another. Rather, consent must be given by one having legal custody of the child." *See also People v. Metcalf*, 926 P.2d 133, 138 (Colo.App.1996) (the trial court did not err in removing the issue of consent from the jury's

consideration in a prosecution for second degree kidnapping in violation of § 18-3-302(1) because, "[a]s a matter of law, a minor child cannot consent to being taken by another").

On the basis of this authority, defendant argues that "the consent requirement does not demand additional proof to establish lack of consent where the person allegedly kidnapped is a child." In other words, as we understand the argument, it is defendant's position that if a child cannot consent to being taken by another, the absence of parental consent is an implied element of the offense of second degree kidnapping of a child in violation of § 18-3-302(2) because parental non-consent will necessarily be proved in every case in which the other elements of the offense are proved. However, as we read *Patton v. People, supra,* and *People v. MacBlane, supra,* an implied element can only be recognized by reliance on the doctrine of logical necessity if it is impossible to conceive of a scenario in which proof of the enumerated elements would not also necessarily prove the implied element.

Thus, the dispositive question is whether, in every case, the offense of second degree kidnapping of a child in violation of § 18-3-302(2) impliedly requires proof that the perpetrator took the child without the consent of a parent. We conclude it does not.

Unlike defendant here, the defendants in *Armendariz v. People, supra, People v. Haynie, supra,* and *People v. Metcalf, supra,* were all charged under § 18-3-302(1), a different subsection of the second degree kidnapping statute which explicitly requires proof that the defendant seized and carried a person from one place to another without the person's consent or lawful justification. Although we are unaware of any reason why the holdings of those decisions establishing a child's inability to consent should not apply with equal force, *as an evidentiary principle,* in a prosecution for a violation of § 18-3-302(2), that is not the question before us.

The plain language of § 18-3-302(2) indicates that a defendant who commits the offense by means of taking a child must, at the time of the taking, possess the intent to keep or conceal the child from his parent or guardian. However, nothing in the language of this section suggests that the parent or guardian must be aware of the defendant's intent at the time the child is taken. *See People v. Woodward, supra* (defendant violated § 18-3-302(2) where he took a fourteen-year-old girl on a six-day trip through several states after obtaining permission from the victim's mother for the victim to accompany defendant to Grand Junction). Indeed, the section does not even require that the parent or guardian ever learn of the taking. Therefore, we conclude that the absence of consent by a parent or guardian is not an implied element of second degree kidnapping committed in violation of § 18-3-302(2).

Moreover, we note that, although the false imprisonment statute requires proof of confinement or detention, a person acting with the intent to keep or conceal a child from the child's parent or guardian could violate § 18-3-302(2) by enticing or decoying a child away from the parent or guardian without confining or detaining the child.

Finally, we reject defendant's argument that the requirement for proof of nonconsent in the "false imprisonment statute drops out where the facts of the case make it inapplicable." Nothing in the language of the statute supports this argument, and defendant does not call our attention to any case that would authorize the use of a statutory construction to eliminate an element of an offense.

Accordingly, because the offense of false imprisonment contains at least one element not contained in the offense of second degree kidnapping committed in violation of § 18-3-302(2), we conclude the court correctly instructed the jury that false imprisonment is a lesser nonincluded offense of second degree kidnapping committed in violation of § 18-3-302(2).

The judgment is affirmed.

Judge GRAHAM and Judge TERRY concur.