# Matter of Dency Epen SORAM, Respondent

*Decided November 17, 2010*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The crime of unreasonably placing a child in a situation that poses a threat of injury to the child's life or health in violation of section 18-6-401(1)(a) of the Colorado Revised Statutes is categorically a crime of child abuse under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2006), even though no proof of actual harm or injury to the child is required. *Matter of Velazquez-Herrera*, 24 I&N Dec. 503 (BIA 2008), clarified.

FOR RESPONDENT: David Ari Collins, Esquire, Denver, Colorado

FOR THE DEPARTMENT OF HOMELAND SECURITY: Lillian Alves, Assistant Chief Counsel

BEFORE: Board Panel: COLE and PAULEY, Board Members. Concurring Opinion: FILPPU, Board Member.

COLE, Board Member:

In a decision dated August 19, 2009, an Immigration Judge found the respondent removable under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2006), as an alien convicted of "a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment." The Immigration Judge also found the respondent statutorily ineligible for voluntary departure and ordered him removed from the United States. The respondent has timely appealed, contesting only the Immigration Judge's determination regarding removability. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the Federated States of Micronesia. The record establishes that on October 24, 2007, he was convicted in the District Court for Arapahoe County, State of Colorado, pursuant to a plea of guilty to the crime of "child abuse—no injury—knowingly or recklessly"

in violation of sections 18-6-401(1) and (7)(b)(I) of the Colorado Revised Statutes.[1]

In July 2008 the Department of Homeland Security initiated removal proceedings on the basis of the respondent's conviction, charging him with deportability under section 237(a)(2)(E)(i) of the Act. Following evidentiary hearings, the Immigration Judge determined that the respondent was convicted of a "crime of child abuse" as that term was defined in *Matter of Velazquez-Herrera*, 24 I&N Dec. 503 (BIA 2008), and he sustained the charge of deportability.

On appeal, the respondent argues that an offense under section 18-6-401(1)(a) of the Colorado Revised Statutes is not categorically a crime of child abuse as defined in *Matter of Velazquez-Herrera*, because the full range of conduct proscribed under the Colorado child abuse statute exceeds the definition of child abuse adopted by the Board. Specifically, he asserts that he was convicted under the clause of the Colorado statute that punishes a person who "permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health." He contends that this "endangerment" crime does not constitute child abuse, because that clause does not require, at a minimum, physical harm, mental or emotional harm, acts injurious to morals, sexual abuse, or child exploitation.

## II. ISSUE

There is no dispute that the respondent was convicted under the endangerment clause of section 18-6-401(1)(a) of the Colorado Revised Statutes, which punishes a person who permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health. Accordingly, we must decide whether our definition of a crime of child abuse

---

[1] Section 18-6-401(1)(a) of the Colorado Revised Statutes provides as follows:

> A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

Section 18-6-401(7)(b)(I) provides that where no death or injury results, an act of child abuse when a person acts knowingly or recklessly is a class 2 misdemeanor, except in certain specified situations in which it is a class 5 felony.

is sufficiently broad to encompass this endangerment-type crime under Colorado law, where there is no actual injury, but rather only a threat of injury.

## III. ANALYSIS

In *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512, we construed the meaning of the term "crime of child abuse" in section 237(a)(2)(E)(i) of the Act as follows:

> [We] interpret the term "crime of child abuse" broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in prostitution, pornography, or other sexually explicit conduct; as well as any act that involves the use or exploitation of a child as an object of sexual gratification or as a tool in the commission of serious crimes, such as drug trafficking. Moreover, as in the "sexual abuse of a minor" context, we deem the term "crime of child abuse" to refer to an offense committed against an individual who had not yet reached the age of 18 years.

*Id.* (footnote omitted). While we set forth the minimum conduct that would qualify as a crime of child abuse, we did not reach the question whether other conduct constituting endangerment of a child would be encompassed in this definition. Notably, a footnote in the concurring opinion observed that

> broad though the definition is, it is unclear whether it extends to crimes in which a child is merely placed or allowed to remain in a dangerous situation, without any element in the statute requiring ensuing harm, e.g., a general child endangerment statute, or selling liquor to an underage minor, or failing to secure a child with a seatbelt.

*Id.* at 518 n.2 (Pauley, concurring).

However, the United States Court of Appeals for the Ninth Circuit has issued a decision addressing this question. *Fregozo v. Holder*, 576 F.3d 1030 (9th Cir. 2009). The court interpreted our decision in *Matter of Velazquez-Herrera* to require that a child must actually be injured for a crime to constitute child abuse. Therefore, the court held that a conviction under California's misdemeanor child endangerment statute was not categorically one for child abuse. In so finding, the Ninth Circuit stated that it was deferring to the Board's interpretation of child abuse in *Matter of Velazquez-Herrera*. *Id.* at 1035. However, as indicated above, we did not

directly address this issue in *Velazquez-Herrera*. We do so now and find no convincing reason to limit offenses under section 237(a)(2)(E) of the Act to those requiring proof of actual harm or injury to the child.

In the context of the separate but related crime of sexual abuse of a minor, the Ninth Circuit has held that the crime defined by section 288(a) of the California Penal Code, which prohibits lewd or lascivious conduct, constitutes sexual abuse of a minor, and therefore an aggravated felony, even though the child suffers no harm or injury. *United States v. Baron-Medina*, 187 F.3d 1144 (9th Cir. 1999). According to the court, even an "'innocuous' touching, 'innocently and warmly received,'" violates the statute, if the touching was done with a sexual intent. *Id.* at 1147 (quoting *People v. Lopez*, 965 P.2d 713, 718 (Cal. 1998)).

In rejecting arguments that this statute covered conduct that could not be considered sexual abuse, the court explicitly rejected "the notion . . . that Congress intended the aggravated felony law to excuse an individual who preys upon a child too young to understand the nature of his advances." *Id*. The court concluded that "[t]he use of young children as objects of sexual gratification is corrupt, improper, and contrary to good order . . . . It constitutes maltreatment, no matter its form." *Id*. (citations omitted). Applying the same reasoning, we respectfully clarify that the term "crime of child abuse," as described in *Velazquez-Herrera*, is not limited to offenses requiring proof of injury to the child.

In addition, we take this opportunity to address a second issue we left open in *Velazquez-Herrera*, namely, whether child neglect and child abandonment were included in the broad definition of child abuse we adopted. In a footnote, we recognized that while our definition was comprehensive enough to subsume most, if not all, crimes of "child neglect," it was not evident that crimes of "child abandonment" would be encompassed. *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512 n.14. Therefore, we decided to "leave that question for another day." *Id.*

We now adopt the suggestion of the concurring opinion in *Matter of Velazquez-Herrera* that the phrase "a crime of child abuse, child neglect, or child abandonment" in section 237(a)(2)(E)(i) of the Act denotes a unitary concept and that our broad definition of child abuse describes the entire phrase. *Id.* at 518-19. This view ensures uniformity in the application of section 237(a)(2)(E)(i), given that endangering a child can reasonably be viewed as either abuse or neglect, and that some States include child endangerment in their definition of "child abuse," while a number of others consider it "child abuse or neglect." *See id.* at 508 (stating that the term "'crime of child abuse' will be determined by reference to a 'flexible, uniform standard that reflects the federal policies underlying' section 237(a)(2)(E)(i) of the Act, and not by reference to legal classifications that vary from State to State" (quoting *Kahn v. INS*, 36 F.3d 1412, 1414-15 (9th Cir. 1994))).

As recently as July 2009, some 38 States,[2] as well as the United States territories of American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the Virgin Islands, included in their civil definition of "child abuse," or "child abuse or neglect," acts or circumstances that threaten a child with harm or create a substantial risk of harm to a child's health or welfare.[3] Child Welfare Information Gateway, U.S. Dep't of Health and Human Services, *Definitions of Child Abuse and Neglect: Summary of State Laws* 2-3 (2009), http://www.childwelfare.gov/systemwide/laws_policies/statutes/define.cfm. In a few of these States, including Pennsylvania, Tennessee, and Wyoming, the threat of harm must be quite high, requiring that the child be placed in "imminent" or "immediate" danger of injury or harm.[4]   However, approximately half of the States that include endangerment-type offenses in their definitions of "child abuse," or "child abuse or neglect" do not specify the degree of threat required.  Moreover, the remaining States use various terms to describe the level of threat required, including "realistic," "serious," "reasonably foreseeable," "substantial," or "genuine."  Since the meaning

---

[2] These States include Alabama, Alaska, Arkansas, California, Colorado, Florida, Hawaii, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, Wisconsin, and Wyoming.

[3] While the concurring opinion focuses only on criminal, rather than civil, statutes prohibiting child abuse, we find it unnecessary to make a distinction between them. In *Matter of Velazquez-Herrera*, 24 I&N Dec. at 508-12, we reviewed various Federal statutes defining "child abuse" primarily for civil purposes.  We properly examined those definitions in the criminal immigration context and considered them in formulating our broad definition of a "crime of child abuse."  The Ninth Circuit, in whose jurisdiction *Matter of Velazquez-Herrera* arose, recently issued an opinion affording our decision deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and finding our interpretation to be reasonable.  *Fregozo v. Holder*, 576 F.3d at 1035-36.  We therefore find the further analysis in the concurring opinion to be unnecessary to determine whether child endangerment is encompassed within the general definition we previously adopted in *Matter of Velazquez-Herrera*.

[4] Pennsylvania includes in the definition of child abuse "[a]ny recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of serious physical injury to" a child under age 18.  23 Pa. Cons. Stat. Ann. § 6303(b) (West 2010).  Tennessee states that child abuse exists when a person under age 18 is "suffering from, has sustained, or may be in immediate danger of suffering from or sustaining a wound, injury, disability, or physical or mental condition caused by brutality, neglect or other actions or inactions of a parent, relative, guardian or caregiver."  Tenn. Code Ann. § 37-1-102(b)(1) (West 2010).  Wyoming defines child abuse as "inflicting or causing physical injury, harm or imminent danger to the physical or mental health or welfare of a child other than by accidental means, including . . . excessive or unreasonable corporal punishment."  Wyo. Stat. Ann. § 14-3-202(a)(ii) (West 2010).

of a term such as "substantial" could be subject to different interpretations by courts in each State, we will not attempt to analyze whether the myriad State formulations of endangerment-type child abuse offenses come within the ambit of "child abuse" under section 237(a)(2)(E)(i) of the Act. Rather, we find that a State-by-State analysis is appropriate to determine whether the risk of harm required by the endangerment-type language in any given State statute is sufficient to bring an offense within the definition of "child abuse" under the Act.

Accordingly, we have reviewed how the courts in Colorado have interpreted the "threat of injury" portion of section 18-6-401(1)(a) of the Colorado Revised Statutes. Initially, we observe that Colorado courts have repeatedly held that a violation of this statute is not a strict liability offense and that a culpable mental state must be shown in order for a conviction to lie. *See People v. Deskins*, 927 P.2d 368, 371 (Colo. 1996) (stating that "the culpable mental states applicable to a crime of child abuse relate not to a particular result, but rather to the nature of the offender's conduct in relation to the child or to the circumstances under which the act or omission occurred" (citing *Lybarger v. People*, 807 P.2d 570, 575 (Colo. 1991))).

The respondent was convicted of "knowingly or recklessly" permitting a child to be unreasonably placed in a situation that posed a threat of injury to the life or health of the child under section 18-6-401(7)(b)(I) of the Colorado Revised Statutes. This "knowingly or recklessly" mens rea is consistent with our definition of a crime of child abuse, which requires an "intentional, knowing, reckless, or criminally negligent act or omission." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512. Colorado courts have held that the term "knowingly" in the statute "refers to the actor's general awareness of the abusive nature of his conduct in relation to the child or his awareness of the circumstances in which he commits an act against the well-being of the child." *People v. Noble*, 635 P.2d 203, 210 (Colo. 1981). Furthermore, "a person acts 'recklessly' when he consciously disregards a substantial and unjustifiable risk that, in light of the child's circumstances, a particular act or omission will place the child in a situation which poses a threat of injury to the child's life or health." *Lybarger v. People*, 807 P.2d at 575.

We conclude that the phrase "an act or omission that constitutes maltreatment of a child" under our definition of a crime of child abuse is sufficiently broad to encompass endangerment-type crimes and that the offense defined by the Colorado statute is categorically a crime of child abuse. *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512. In so holding, we observe that Colorado's purpose in including the endangerment clause in its child abuse statute is similar to that of Congress in enacting section 237(a)(2)(E)(i) of the Act. In *Matter of Velazquez-Herrera*, 24 I&N Dec. at 509, we indicated that the enactment of section 237(a)(2)(E)(i) in 1996 was the product

of a significant expansion of the grounds of deportability and was "clearly intended to single out those who have been convicted of maltreating or preying upon children." Similarly, the Supreme Court of Colorado has observed that it "interpreted the endangerment clause of section 18-6-401(1)(a) to 'protect children, who frequently are unable to care for themselves, from the risk of injury or death associated with conduct that places a child in a situation that poses a threat to the child's well-being.'" *People v. Dunaway*, 88 P.3d 619, 625 (Colo. 2004) (quoting *Lybarger v. People*, 807 P.2d at 578).

In addition, the culpability of those who permit a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health is quite high. In this regard, we observe that, prior to 1980, section 18-6-401(1)(a) of the Colorado Revised Statutes used the phrase "may endanger [a child's] life or health." *People v. Weinreich*, 119 P.3d 1073, 1077 (Colo. 2005). The Supreme Court of Colorado has recognized that the use of the phrase "may endanger" introduced a "broad and unconstitutionally vague spectrum of speculative causal possibilities," noting that "'virtually any conduct directed toward a child has the possibility, however slim, of endangering the child's life or health.'" *Id.* at 1078 (quoting *People v. Hoehl*, 568 P.2d 484, 486 (1977)). Accordingly, to render the statute constitutional, the court interpreted the phrase "may endanger" to mean that "there is a *reasonable probability* that the child's life or health *will be* endangered from the situation in which the child is placed." *People v. Hoehl*, 568 P.2d at 486 (emphasis added).

In 1980, the Colorado legislature repealed and reenacted the child abuse statute, adding an "endanger" provision alongside the "may endanger" provision. *People v. Weinreich*, 119 P.3d at 1077. However, this construction produced a new set of problems, because it raised the question whether the "may endanger" and "endanger" clauses punished the same behavior with different penalties, thereby violating equal protection guarantees. *See People v. Schwartz*, 678 P.2d 1000 (Colo. 1984).

In an effort to resolve this problem, in 1985 the Colorado legislature deleted all references to "may endanger" or "endanger" and defined the offense as permitting the child "'to be unreasonably placed in a situation that poses a threat of injury to the child's life or health.'"[5] *People v. Weinreich*, 119 P.3d at 1077 (quoting section 18-6-401(1)(a) of the Colorado Revised Statutes); *see also* 1985 Colo. Sess. Laws, ch. 154, at 672-73. There is no indication that

---

[5] According to *People v. Weinreich*, 119 P.3d at 1078, the "[t]wo purposes of the new legislation were to (1) eliminate the phrases "may endanger" and "endanger" that had resulted in confusion, and (2) create an understandable definition of child abuse. *See Hearing on S.B. 85-42 Before the Senate Judiciary Comm.*, 55th Gen. Assem., 1st Sess. (January 8, 1985) (statements of Senator Ezzard)."

by amending section 18-6-401(1)(a) to replace, inter alia, the phrase "[p]laced in a situation that *may endanger* the child's life or health" with "placed in a situation that *poses a threat of injury* to the child's life or health," the legislature intended that the degree of culpability would somehow be lowered from that which already existed. On the contrary, given the Colorado Supreme court's holding in *Hoehl* that the legislature's previous use of the broad and vague phrase "may endanger" meant that there was at least a *reasonable probability* that the child's life or health *will be* endangered, the statute's current, more definitive phrase "poses a threat of injury" must evince a degree of culpability at least as great as that previously required under the statute.

In this regard, the dissent in *People v. Weinreich* offered the following observation concerning the 1985 statutory change:

> In addition to bringing the various descriptions of conduct constituting child abuse together in a single definition and subsection of the statute, and replacing both "may endanger" and "endanger" with "poses a threat of injury," the 1985 amendments at issue here expressly codified the "reasonable probability" limitation of *Hoehl* by predicating criminal liability on the child being "unreasonably" placed in a situation that poses a threat. Permitting a child to be placed in a situation posing a threat involving less than a "reasonable probability" of injury is clearly not unreasonable, and therefore no longer punishable as child abuse under the current statute.

*People v. Weinreich*, 119 P.3d at 1080 (Coats, J., dissenting).[6]

Colorado courts have repeatedly emphasized the importance of the word "unreasonably," finding it to be synonymous with acting "without justifiable excuse." *People v. Johnson*, 74 P.3d 349, 354 (Colo. App. 2003). Thus, in *People v. Ortiz*, 155 P.3d 532, 534 (Colo. App. 2006), the Colorado Court of Appeals agreed that the defendant had unreasonably placed a child in a situation that posed a threat of injury to the child's life or health by abandoning the 4-year-old in a vehicle in the middle of the night, with the key still in the ignition. The court observed that while the child was not actually injured, the "defendant exposed the child to numerous perils. Among other things, the child could have been injured by others, injured himself, suffered from exposure, or wandered off in search of his mother." *Id.*

In sum, the Colorado child abuse law requires a knowing or reckless act, and the juvenile status of the victim is an element of the offense. Furthermore, we find that the full range of conduct proscribed by section 18-6-401(1)(a)

---

[6] The issue in dispute in *People v. Weinreich* was a somewhat technical one concerning the propriety and sufficiency of jury instructions at the trial level. The decision does not reflect any meaningful disagreement between the majority and the dissent on the issue of the reasoning behind, and the meaning of, the various legislative changes to Colorado's child abuse statute over the years.

of the Colorado Revised Statutes falls squarely within the definition of a "crime of child abuse." *See Matter of Velazquez-Herrera*, 24 I&N Dec. at 512. We therefore conclude that the respondent's offense categorically qualifies as a "crime of child abuse" under section 237(a)(2)(E)(i) of the Act. *Id.*; *see also Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991, 996 (BIA 1999). Accordingly, the respondent's appeal will be dismissed.

 **ORDER:** The appeal is dismissed.


*CONCURRING OPINION*: Lauri Steven Filppu, Board Member

 I respectfully concur.

 In order to resolve the issue whether the respondent is removable, we must determine whether the offense of child abuse under section 18-6-401(1)(a) of the Colorado Revised Statutes constitutes a "crime of child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2006). As observed in the majority decision, in *Matter of Velazquez-Herrera*, 24 I&N Dec. 503 (BIA 2008), we recognized, but left unanswered, the question whether conduct constituting child endangerment would come within the ambit of a crime of child abuse under the Act. The majority's conclusion in this matter is certainly a reasonable one, and while I agree with the outcome, this for me is a more difficult case. Most importantly, I would take a different approach in answering the question before us.

 For immigration purposes, Congress did not cross-reference a Federal statute in defining "a crime of child abuse, child neglect, or child abandonment" in section 237(a)(2)(E)(i) of the Act. The Supreme Court has instructed that in such cases, we should focus on the "generally accepted contemporary meaning of a term" at the time the statute was enacted. *Taylor v. United States*, 495 U.S. 575, 596 (1990); *see also United States v. Lopez-Solis*, 447 F.3d 1201, 1207 (9th Cir. 2006) (stating that an offense should be defined based on "'the ordinary, contemporary, and common meaning' of the statutory words" (quoting *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1143 (9th Cir. 2001))). Thus, I believe it is appropriate to survey the child abuse statutes of the various United States jurisdictions at the time that the phrase "crime of child abuse, child neglect, or child abandonment" was added to the Act in September 1996. Moreover, given that section 237(a)(2)(E)(i) speaks in terms of a *crime* of child abuse, I find it most

relevant to look to the criminal statutes of the various States in 1996, rather than the civil statutes.[1]

The Colorado child abuse statute under which the respondent was convicted is divided into three prongs: (1) causing injury to a child's life or health; (2) permitting a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health; and (3) engaging in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child. Colo. Rev. Stat. Ann. § 8-60-401(1)(a) (West 2007). There is no dispute that the respondent was convicted under the second prong of the statute, which prohibits child endangerment.

A review of the criminal child abuse statutes of the various States reveals that as of September 1996, a majority of States—28—had criminal provisions punishing child endangerment offenses as part of their criminal child abuse statutes.[2] It appears that the States took varied approaches to including such child endangerment offenses in their criminal prohibitions. Some, such as Nevada, employed a statutory scheme similar to that used by Colorado, criminalizing injury to a child, child endangerment, and child neglect in a single consolidated child abuse statute. *See* Nev. Rev. Stat. Ann. § 200.508 (West 1996). Others, such as South Dakota, did not specifically include child endangerment in their child abuse statute, but separately defined child abuse to include child endangerment. *See* S.D. Codified Laws §§ 26-10-1, 26-8A-2(6) (1996). In any case, it appears that all

---

[1] Section 237(a)(2)(E)(i) of the Act was enacted pursuant to section 350(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-639, and is effective with respect to convictions occurring after September 30, 1996. *See id.* § 350(b), 110 Stat. at 3009-640; *Matter of Gonzalez-Silva*, 24 I&N Dec. 218, 220 (BIA 2007). I focus on State statutes because no Federal statute imposed criminal liability in this context.

[2] *See* Ala. Code § 13A-13-6 (1996); Ariz. Rev. Stat. Ann. § 13-3623 (1996); Cal. Penal Code § 273a (West 1996); Colo. Rev. Stat. Ann. § 18-6-401 (West 1996); Conn. Gen. Stat. Ann. § 53-21 (West 1996); Del. Code Ann. tit. 11, § 1103 (West 1996); Ga. Code Ann. § 16-5-70 (West 1996); Idaho Code Ann. § 18-501 (West 1996); Iowa Code Ann. § 726.6 (West 1996); Kan. Stat. Ann. § 21-3608 (West 1996); Ky. Rev. Stat. Ann. § 530.060 (West 1996); Me. Rev. Stat. Ann. tit. 17-A, § 554 (1996); Md. Ann. Code art. 27, § 35C (1996); Minn. Stat. Ann. § 609.378 (West 1996); Neb. Rev. Stat. § 28-707 (1996); Nev. Rev. Stat. Ann. § 200.508 (West 1996); N.H. Rev. Stat. Ann. § 639:3 (1996); N.J. Stat. Ann. § 2C:24-4 (West 1996); N.M. Stat. Ann. § 30-6-1 (West 1996); N.C. Gen. Stat. Ann. § 14-318.2 (West 1996); Ohio Rev. Code Ann. § 2919.22 (West 1996); Okla. Stat. Ann. tit. 10, § 7102 (West 1996); S.C. Code Ann. § 20-7-50 (1996); S.D. Codified Laws §§ 26-10-1, 26-8A-2 (1996); Utah Code Ann. § 76-5-109 (West 1996); W. Va. Code Ann. § 61-8D-3 (West 1996); Wis. Stat. Ann. § 948.03 (West 1996); Wyo. Stat. Ann. § 6-4-403 (West 1996).

28 of these jurisdictions generally, via various mechanisms, criminalized child endangerment as part of their criminal prohibitions on child abuse. I am therefore satisfied that child endangerment was part of the "ordinary, contemporary, and common" meaning of a crime of child abuse, child neglect, or child abandonment in 1996. *United States v. Trinidad-Aquino*, 259 F.3d at 1143.

However, the analysis does not end there. Colorado's statute does not require that the person who endangers a child be the child's custodian or otherwise have a particular duty of care or protection toward the child who is endangered. This stands in contrast to most of the States that included a child endangerment prohibition in their criminal child abuse statutes. In this regard, of the 28 States that included child endangerment in their statutes in 1996, 22 of them had a specific requirement that there be a custodial relationship or duty of care or protection in their endangerment provisions.[3]

I also observe that of the remaining six States (including Colorado) that did not require a custodial relationship or special duty of care in their endangerment provisions,[4] published cases in at least three of them reflect prosecutions against, and convictions of, actors where no such custodial relationship was actually present.[5] Thus, it is not outside the realm of possibility that Colorado, which similarly lacks a custodial relationship as a statutory element, could apply its child endangerment provision against a noncustodial actor. At the very least, Colorado's statutory scheme does not, on its face, preclude such an approach.

However, there are several reasons why I would find that, despite the lack of a custodial relationship requirement, Colorado's child endangerment prong comes within the "ordinary, contemporary, and common" meaning of a crime of child abuse, child neglect, or child abandonment. The United States Supreme Court has instructed that in order to find that a State statute creates a crime outside the generic definition, there must be "a realistic probability, not a theoretical possibility," that the State would apply its statute to conduct that falls outside the generic definition of a crime. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). In other words, under *Duenas-Alvarez*, the relevant question is how the prosecuting authority "would

---

[3] These 22 States included Alabama, Arizona, California, Delaware, Georgia, Idaho, Iowa, Kentucky, Maine, Maryland, Minnesota, Nevada, New Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, South Carolina, Utah, West Virginia, Wisconsin, and Wyoming.

[4] These six States included Colorado, Connecticut, Kansas, Nebraska, New Mexico, and South Dakota.

[5] *See, e.g.*, *State v. Davila*, 816 A.2d 673 (Conn. App. Ct. 2003); *State v. Wilson*, 987 P.2d 1060 (Kan. 1999); *State v. Lujan*, 712 P.2d 13 (N.M. Ct. App. 1985).

apply its statute" in actual practice. *Id.* The fact that the statute's language does not forbid a broader construction is not determinative.

In *Duenas-Alvarez*, the Supreme Court stated that in order to show the existence of a "realistic probability" that a State court would apply its statute to an offense outside the generic definition, an offender must, at a minimum, point either to his own case or other cases in which the State courts did, in fact, apply the statute in the special (nongeneric) manner for which he argues. *Id*. In this case, the respondent does not argue that there was not a custodial relationship in his case,[6] nor has he pointed to any cases where Colorado State courts have applied the endangerment prong in noncustodial situations. Moreover, our own review of Colorado's published caselaw has uncovered no instances in which a person has been convicted of child abuse under the "endangerment" prong of section 18-6-401(1)(a) of the Colorado Revised Statutes in the absence of a custodial relationship or other duty of care.

A significant countervailing consideration arises from *People v. Deskins*, 927 P.2d 368 (Colo. 1996), in which the Supreme Court of Colorado upheld a conviction for child abuse under section 18-6-401(1)(a) where there was no custodial relationship or other preexisting duty of care between the defendant and the victims, and the victims were either injured or killed by his abuse. Specifically, *Deskins* involved a situation where the defendant drove a vehicle while intoxicated and his vehicle hit another, injuring and killing several children who were passengers in the struck vehicle. The court found that the defendant was guilty of child abuse, despite his lack of a custodial relationship or other special duty of care to the children in the other vehicle or, indeed, any prior awareness that there were children in the other vehicle at all. However, this decision involved the first prong of section 18-6-401(1)(a) relating to *actual injury* to a child's life or health. Thus it is of limited use in determining whether Colorado would apply the second (endangerment) prong in a situation where the actor did not have a custodial or other special relationship to the child.[7]

In this respect, I find it significant that the first and second prongs of Colorado's child abuse statute differ markedly in their language. The

---

[6] The lack of such an argument is not surprising, because the criminal complaint and information in this case appear to reflect that the child in question in the underlying criminal case was the respondent's son.

[7] In light of the fact that, per *Deskins*, the first prong of section 18-6-401(1)(a) of the Colorado Revised Statutes does not require a custodial relationship, I am skeptical as to the majority's conclusion that an offense under any part of section 18-6-401(1)(a) categorically constitutes a crime of child abuse. I would not reach that issue, as the respondent's conviction was limited to the child endangerment prong of the statute. The majority has not shown that Congress intended to cover State "child abuse" convictions arising from criminal acts against the general public that solely by chance caused harm to a child.

first prong refers to any person who "causes an injury to a child[]." By contrast, the endangerment prong refers to a person who "*permits* a child" to be endangered. (Emphasis added.) The act of permitting another person, in this case a child, to be placed in a situation of endangerment logically presupposes some sort of preexisting relationship in which the actor has the authority and ability to allow the child to be endangered. While this phrasing is not by itself determinative, I find it to be another indication that Colorado would not apply its statute to child endangerment conduct that falls outside my understanding of the generic definition of a crime of child abuse, child neglect, or child abandonment.

Accordingly, I concur with the majority's determination that the respondent is removable as charged under section 237(a)(2)(E)(i) of the Act.