FILED
United States Court of Appeals
Tenth Circuit

April 14, 2021

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

VICTOR ZARATE-ALVAREZ,

Petitioner,

v.

MERRICK B. GARLAND,[*] United States
Attorney General,

Respondent.

No. 19-9570
(Petition for Review)

_____

## ORDER

_____

Before **HARTZ**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

_____

This matter is before the court on *Respondent's Motion for Publication of the Court's March 23, 2021 Opinion.* Upon consideration, the motion is granted. The published opinion, filed *nunc pro tunc* to the original filing date, is attached to this order.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

_____

[*] Pursuant to Fed. R. App. P. 43(c)(2) Merrick B. Garland is substituted for William P. Barr, former Attorney General, as respondent in this matter.

FILED
United States Court of Appeals
Tenth Circuit

March 23, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VICTOR ZARATE-ALVAREZ,

      Petitioner,

v.

No. 19-9570

MERRICK B. GARLAND,* United States
Attorney General,

      Respondent.
_____

**Petition for Review of an Order from the
Board of Immigration Appeals**
_____

Submitted on the briefs:**

Shawn D. Meade, Esq., Denver, Colorado, on the brief for Petitioner.

Joseph H. Hunt, Assistant Attorney General, Civil Division; Jennifer J. Keeney, Assistant Director; Erica B. Miles, Senior Litigation Counsel, Criminal Immigration Team, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., on the brief for Respondent.
_____

Before **HARTZ**, **SEYMOUR**, and **MURPHY**, Circuit Judges.
_____

    * Pursuant to Fed. R. App. P. 43(c)(2) Merrick B. Garland is substituted for William P. Barr, former Attorney General, as respondent in this matter.

    ** After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). Accordingly, this court entered an order on March 11, 2021, submitting the case without oral argument.

_____

Victor Zarate-Alvarez, a native and citizen of Mexico, seeks review of a Board of Immigration Appeals (BIA) decision denying his application for cancellation of removal.  Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

## Background

Zarate pleaded guilty to knowing or reckless child abuse in violation of Colo. Rev. Stat. § 18-6-401(1)(a), (7)(b)(I).  Several years later, the Department of Homeland Security initiated removal proceedings, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) of the Immigration and Nationality Act (INA) because he was present without having been admitted or paroled.  Zarate conceded removability and filed an application for cancellation of removal under 8 U.S.C. § 1229b(b).

After a hearing, an Immigration Judge (IJ) denied the application, concluding that Zarate is ineligible for cancellation under § 1229b(b)(l)(C) because his state child abuse conviction constitutes "a crime of child abuse, child neglect, or child abandonment" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i).  The BIA agreed with the IJ's determination and dismissed Zarate's appeal.

## Discussion

Zarate challenges the Board's decision on two grounds.  First, he argues that the BIA's most recent interpretations of § 1227(a)(2)(E)(i) are not entitled to

2

deference. Second, he argues that his state conviction is not a categorical match to a "crime of child abuse" as defined by the Board. We reject both arguments.

### 1. Jurisdiction and Standard of Review

We do not have jurisdiction to review the BIA's discretionary determinations under § 1229b regarding applications for cancellation of removal, § 1252(a)(2)(B)(i), but we do have jurisdiction to review questions of law arising in removal proceedings, § 1252(a)(2)(D); *see also Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020) (interpreting § 1252(a)(2)(D) to allow review of "application of a legal standard to undisputed or established facts"); *Shepherd v. Holder*, 678 F.3d 1171, 1179 (10th Cir. 2012) (holding that § 1252(a)(2)(D) allows review of issues of statutory construction).

We review de novo the BIA's conclusions on questions of law, including whether a particular state conviction results in ineligibility for discretionary relief. *Ibarra v. Holder*, 736 F.3d 903, 910 (10th Cir. 2013). Where, as here, the INA refers to generic crimes, we apply the categorical approach to determine whether a state conviction falls within the generic federal definition. *Id.* at 907. Under the categorical approach, we compare the elements of the statute of conviction with the generic federal definition of the crime to determine whether conduct that would satisfy the former would necessarily also satisfy the latter.[1] *Moncrieffe v. Holder*,

---

[1] Zarate refers to the "modified categorical approach" in his appellate brief. *See* Aplt. Br. at 14-15. We would employ the modified categorical approach if Zarate had been convicted under a "divisible" state statute. *Descamps v. United States*, 570 U.S. 254, 257 (2013). But neither Zarate nor the Attorney General

569 U.S. 184, 190 (2013).  In making that comparison, we ignore the petitioner's actual conduct and examine "only the minimum conduct needed for a conviction under the relevant state law."  *Ibarra*, 736 F.3d at 907.  We follow the decisions of the state's highest court in identifying the minimum conduct proscribed by the relevant criminal statute.  *De Leon v. Lynch*, 808 F.3d 1224, 1230 (10th Cir. 2015).

Where a statute is silent or ambiguous on the relevant question, we apply *Chevron* deference to the Board's interpretation of the statute it is charged with administering.  *Ibarra*, 736 F.3d at 910; *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984).  Under *Chevron*, we defer to the Board's precedential decisions if its "interpretation is not arbitrary, capricious, or manifestly contrary to the statute."  *Efagene v. Holder*, 642 F.3d 918, 920 (10th Cir. 2011).  The question for the court "is not whether [the agency's interpretation] represents the best interpretation of the statute, but whether it represents a reasonable one."  *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 744-45 (1996); *see also Chevron*, 467 U.S. at 866 ("When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail.").

---

contends that the Colorado statute under which he was convicted is divisible, so we do not consider whether we should apply the modified categorical approach.

### 2. The Board's Interpretation of § 1227(a)(2)(E)(i)

Under § 1229b(b)(1)(C), an alien is ineligible for cancellation of removal if he has been convicted of one of the crimes listed in § 1227(a)(2), including "a crime of child abuse, child neglect, or child abandonment," 8 U.S.C. § 1227(a)(2)(E)(i). The INA does not define "a crime of child abuse, child neglect, or child abandonment," and the BIA's interpretation of that term has evolved over the years since § 1229b(b)(1)(C) was adopted. *See Ibarra*, 736 F.3d at 908-10.

As an initial matter, we reject Zarate's contention that our analysis should be guided by the BIA's decision in *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991 (BIA 1999). Before the BIA decided *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503 (BIA 2008)—its first precedential decision interpreting § 1227(a)(2)(E)(i)—it referred to § 1227(a)(2)(E)(i) in *Rodriguez-Rodriguez* in the context of interpreting 8 U.S.C. § 1101(a)(43)(a), which makes "sexual abuse of a minor" a removable "aggravated felony" for purposes of § 1227(a)(2)(A)(iii). *Rodriguez-Rodriguez*, 22 I. & N. Dec. at 996. The BIA held that a state offense of indecency with a child was "sexual abuse of a minor" and thus an aggravated felony, even though the state statute did not require physical contact with a child. *Id.* at 995-96. It reasoned that the term "sexual abuse of a minor," like the term "child abuse" in § 1227(a)(2)(E)(i), could refer to conduct that did not involve physical contact. 22 I. & N. Dec. at 996. But the BIA's reference to child abuse in its definition of "sexual abuse of a minor" did not purport to offer a precedential interpretation of what constitutes "a crime of child abuse, child neglect, or child abandonment" under § 1227(a)(2)(E)(i).

5

We recognize that we relied on *Rodriguez-Rodriguez* in deciding whether a state conviction was a deportable child abuse offense in *Ochieng v. Mukasey*, 520 F.3d 1110, 1114-15 (10th Cir. 2008). Contrary to Zarate's contention, however, our reliance on *Rodriguez-Rodriguez* before the Board issued precedential decisions directly interpreting § 1227(a)(2)(E)(i) does not preclude our reliance now on the BIA's more recent decisions. Thus, we are not, as Zarate urges, bound by a definition of "child abuse" rooted in cruelty, *see Rodriguez-Rodriguez*, 22 I. & N. Dec. at 996 (referring to the then-Black's Law Dictionary definition of "child abuse" as including "any form of cruelty to a child's physical, moral or mental well-being" (brackets and internal quotation marks omitted)). *See Chevron*, 467 U.S. at 863-64 (explaining that "[a]n initial agency interpretation is not instantly carved in stone" and that "to engage in informed rulemaking, [the agency] must consider varying interpretations and the wisdom of its policy on a continuing basis").

The precedential BIA decisions interpreting § 1227(a)(2)(E)(i) are *Matter of Velazquez-Herrera*, *Matter of Soram*, 25 I. & N. Dec. 378 (BIA 2010), and *Matter of Mendoza Osorio*, 26 I. & N. Dec. 703 (BIA 2016). Those decisions explore the boundaries of "a crime of child abuse" both in terms of the *mens rea* requirement and the *actus reus* requirement, which in this context means the extent to which the petitioner's conduct must cause injury to or present a risk of harm to the child.

In *Velazquez-Herrera*, the BIA interpreted the term "crime of child abuse" to mean "any offense involving an intentional, knowing, reckless, or criminally

6

negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being." 24 I. & N. Dec. at 512.

Then, in *Soram*, the BIA determined that *Velazquez-Herrera*'s definition is broad enough to include the same Colorado child-endangerment statute at issue here, even though it criminalizes conduct that does not result in actual injury to a child. *Soram*, 25 I. & N. Dec. at 381, 383. *Soram*'s definition is expansive but not unlimited: for a conviction under a state child-endangerment statute to qualify as a "crime of child abuse," the statute must require, as an element of the crime, a sufficiently high risk of harm to a child. *See id.* at 385 (holding that Colorado's child-endangerment statute is a "crime of child abuse" in part because "[p]ermitting a child to be placed in a situation posing a threat involving less than a reasonable probability of injury" is not "punishable as child abuse" under the Colorado statute (internal quotation marks omitted)). The BIA has not identified a specific minimum risk level required for a child-endangerment conviction to qualify as "a crime of child abuse" under the INA. But in *Mendoza Osorio*, it embraced the view that a statute that does not "require . . . any particular likelihood of harm to a child" would not include "a sufficiently high risk of harm to a child" to qualify as INA child abuse. 26 I. & N. Dec. at 711 (internal quotation marks omitted).

### 3. The BIA's Denial of Zarate's Application for Cancellation of Removal

The decision whether Zarate's statute of conviction constitutes a deportable "crime of child abuse" sits at the intersection of the Board's decisions regarding the required *mens rea* and the required level of risk to the child. His statute of

7

conviction prohibits "knowingly or recklessly" "permit[ting] a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health."  Colo. Rev. Stat. § 18-6-401(1)(a), (7)(b)(1); *see also* 1985 Colo. Sess. Laws, ch. 154, at 672-73 (reflecting amendments defining Zarate's offense).

Relying on *Velazquez-Herrera*, *Soram*, and *Mendoza Osorio*, the BIA concluded that Zarate's conviction is "a crime of child abuse" under § 1227(a)(2)(E)(i).  It noted its prior decisions holding that non-injurious conduct that poses an unreasonable risk of harm to a child can constitute "a crime of child abuse" and that in *Soram* it held that a conviction under the same subsection of the Colorado statute at issue here "is categorically a crime of child abuse" under § 1227(a)(2)(E)(i) because "the knowingly or reckless *mens rea* is consistent with [the Board's] definition of a crime of child abuse."  Admin. R. at 3 (emphasis added, internal quotation marks omitted).  The BIA thus affirmed the IJ's determination that Zarate's state conviction was a removable offense that rendered him ineligible for cancellation of removal.

4. **The Board's Interpretation of § 1227(a)(2)(E)(i) as Including Child-Endangerment Convictions for Reckless or Knowing Non-Injurious Conduct is Entitled to *Chevron* Deference**

*Ibarra* was our first opportunity to address the BIA's definition of a crime of child abuse.  The issue there was whether a Colorado child abuse conviction under Colo. Rev. Stat. § 18-6-401(7)(b)(II)—a different subsection of the statute at issue here, which criminalizes negligent conduct and omissions that create a reasonable probability of harm but result in no injury to the child—was "a crime of child abuse,

8

child neglect, or child abandonment" under § 1227(a)(2)(E)(i).  *See Ibarra*, 736 F.3d at 908.  Based on its decisions in *Velazquez-Herrera* and *Soram*, the BIA determined that it was.  *See id.* at 909.  We recognized that the INA does not define "a crime of child abuse" in § 1227(a)(2)(E)(i) and that because the "statutory text [] contain[s] some ambiguity," the BIA's precedential decisions interpreting it were candidates for *Chevron* deference.  *Ibarra*, 736 F.3d at 910 (emphasis omitted).  But we declined to defer to the BIA's interpretation of § 1227(a)(2)(E)(i) as including "non-injurious criminally negligent conduct," noting that it was an interpretation rooted in civil, not criminal definitions of child abuse, which do not include a *mens rea* requirement, and that when Congress enacted § 1227(a)(2)(E)(i), a majority of states "did not criminalize such conduct."  *Ibarra*, 736 F.3d at 917-18.

Contrary to Zarate's contention, *Ibarra* does not require reversal here simply because the Board cited *Velazquez-Herrera* and *Soram* in support of its denial of his application.[2]  In *Ibarra*, we determined only that the Board's definition of "a crime of child abuse, child neglect, or child abandonment" was "overinclusive" because it covered "non-injurious criminally negligent conduct."  *Id.* at 918.  Our decision not to defer to the Board's definition in *Ibarra* does not preclude us from doing so here because we are faced with an entirely different question than the one raised in *Ibarra*.  Specifically, although the state convictions at issue here and in *Ibarra* were obtained

---

[2] Zarate's argument opposing deference focuses on *Velazquez-Herrera*.  His brief does not acknowledge *Soram*, which interpreted his statute of conviction and which the IJ and BIA both relied on in denying his application.  Despite Zarate's failure to address it, we assume he objects to any deference to *Soram* as well.

9

under statutes that did not require injury to a child, Zarate's conviction included the *mens rea* requirement that was missing in *Ibarra* and that drove our determination that the Board's interpretation of § 1227(a)(2)(E)(i) was unreasonably broad.

As pertinent to the issue before us, the Board's decisions define "a crime of child abuse, child neglect, or child abandonment" as including state child-endangerment convictions for knowing or reckless conduct that does not result in injury to the child, provided the state statute requires, as an element of the crime, a sufficiently high risk of harm to a child. *See Mendoza Osorio*, 26 I. & N. Dec. at 711. We conclude that this definition is a reasonable construction of § 1227(a)(2)(E)(i). It is consistent with Congress' "inten[t] to make only *crimes* of child abuse, child neglect, and child abandonment deportable" offenses, *Ibarra*, 736 F.3d at 912, and the combination of the required *mens rea* and required risk level places a reasonable limitation on the offenses that constitute "child abuse" under the INA. Accordingly, we defer to this aspect of the Board's definition, as have our sister circuits that have considered whether state child-endangerment convictions are removable offenses under § 1227(a)(2)(E)(i). *See, e.g.*, *Zhi Fei Liao v. Att'y Gen.*, 910 F.3d 714, 722 (3d Cir. 2018); *Florez v. Holder*, 779 F.3d 207, 212-14 (2d Cir. 2015).[3]

---

[3] The Second Circuit recently reaffirmed its deference to the Board's definition in a child-endangerment case involving knowing conduct and a likelihood of harm but no actual harm to the child. *See Matthews v. Barr*, 927 F.3d 606, 610, 613-16 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 158 (2020).

10

### 5. Zarate's Child Abuse Conviction is a Categorical Match

As long as all conduct criminalized under § 18-6-401(1)(a), (7)(b)(I), as interpreted by the Colorado Supreme Court, satisfies the elements of the generic federal definition, it is categorically a "crime of child abuse, child neglect, or child abandonment" rendering Zarate statutorily ineligible for cancellation of removal. *See Moncrieffe*, 569 U.S. at 190; *Ibarra*, 736 F.3d at 907.

Relying on the BIA's decision in *Rodriguez-Rodriguez*, which we have already explained does not apply here, Zarate maintains that his conviction is not a categorical match because it "does not include in the elements any offense which would be considered cruelty to a child." Aplt. Br. at 13-14. More specifically, he maintains his state conviction is not "a crime of child abuse" within the meaning of § 1227(a)(2)(E)(i) because the state statute does not require intentional conduct and actual injury to the child. *See id.* at 16-17.

In *Soram*, the BIA compared the elements of the same Colorado statute to its definition of "a crime of child abuse" and determined that it is a categorical match. *See* 25 I. & N. Dec. at 385-86. In doing so, it analyzed Colorado Supreme Court decisions describing the minimum conduct proscribed by the statute, including the meaning of "knowingly" and "recklessly," and the risk level required to find that a defendant "unreasonably placed [a child] in a situation that poses a threat of injury." *See id.* (holding that Colorado's child-endangerment statute is categorically a "crime of child abuse" under the INA, in part because Colorado Supreme Court cases

11

interpret the risk of harm element as requiring at least "a reasonable probability of injury" (internal quotation marks omitted)).

Although we do not defer to the BIA's interpretations of the substance of the state law offense at issue, *see Efagene*, 642 F.3d at 921, Zarate does not challenge the BIA's decision on that basis, so we need not address it at length here. We have, however, conducted our own review of the applicable state law and we agree with the Board's determination that the minimum conduct proscribed by the Colorado statute as interpreted by the Colorado Supreme Court is a categorical match for the generic federal definition. Zarate's conviction does not fall within the "criminally negligent" aspect of the Board's definition of a crime of child abuse, which is what we deemed unreasonable in *Ibarra*. Instead, by its plain language, the Colorado statute requires knowing or reckless conduct that presents a real risk of harm to a child's physical or mental well-being. *See People v. Weinreich*, 119 P.3d 1073, 1078 (Colo. 2005) (recognizing that "a reasonable probability that the child's life or health *will be* endangered" is an element of the offense (internal quotation marks omitted)); *see also id*. at 1080 (Coats, J., dissenting) ("the 1985 amendments at issue here expressly codified the 'reasonable probability' [requirement] by predicating criminal liability on the child being 'unreasonably' placed in a situation that poses a threat."). Zarate's conviction thus falls squarely within the portion of the Board's definition that we have decided is entitled to *Chevron* deference. *See Mendoza Osorio*, 26 I. & N. Dec. at 706 (elements of state child endangerment statute, which included "a knowing mental state coupled with an act or acts creating a likelihood of harm to a child[,] fit

12

within [BIA's] definition of a 'crime of child abuse, child neglect, or child abandonment'"); *see also Matthews*, 927 F.3d at 618-23 (child-endangerment conviction under state statute prohibiting "knowingly act[ing] in a manner likely to be injurious to the physical, mental, or moral welfare of a child" was a categorical match for generic federal definition of child abuse (internal quotation marks omitted)); *Florez*, 779 F.3d at 209 (same).

## Conclusion

For the foregoing reasons, we deny the petition for review.