**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 23-1676**

—————————

DAVID ORLANDO MARQUEZ CRUZ,

        Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

        Respondent.

—————————

On Petition for Review of an Order of the Board of Immigration Appeals.

—————————

Argued: March 19, 2024                             Decided: May 14, 2024

—————————

Before WILKINSON, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

—————————

Petition denied by published opinion. Judge Wilkinson wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

—————————

**ARGUED:** Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Imran Raza Zaidi, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Himedes V. Chicas, JEZIC & MOYSE, LLC, Silver Spring, Maryland, for Petitioner. Brian M. Boynton, Principal Deputy Assistant Attorney General, Jennifer J. Keeney, Assistant Director, Melissa K. Lott, Senior Litigation Counsel, Criminal Immigration Team, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

—————————

WILKINSON, Circuit Judge:

The Immigration and Nationality Act instructs that any noncitizen convicted of a crime of child abuse, child neglect, or child abandonment is subject to removal. David Orlando Marquez Cruz, a Salvadoran national, was convicted of attempted second degree child sexual abuse in violation of Washington, D.C., law. He has been ordered to be removed from the United States based on that conviction. The only question on appeal is whether Cruz's conviction qualifies him for removal. We hold that it does.

I.

Cruz became a lawful permanent resident of the United States in 2009 when he was eighteen years old. In February 2017, when Cruz was twenty-six years old, he began a sexual relationship with a fifteen-year-old child. The victim was a family friend from El Salvador whom Cruz had known for years. Indeed, Cruz had attended her fifteenth birthday party not long before their first sexual encounter.

The child's mother soon discovered the relationship and pressed charges. Cruz was initially arrested in March 2017 and charged with first degree child sexual abuse under D.C. Code 22-3008. He was released pending a hearing with a protective order prohibiting him from having contact with the victim. But his release was short lived. Just four months later, Cruz violated the protective order by having sex with the victim at least two more times and was rearrested in November 2017.

Though Cruz had originally been charged with first degree child sexual abuse, he eventually pleaded guilty to attempted second degree child sexual abuse under D.C. Code 22-3009 and 22-3018. He was sentenced to eighteen months' incarceration and twenty-

2

four months' supervised release. His sentence was suspended as to all but time served and he was released from custody in March 2018.

The consequences of Cruz's conviction, however, extended beyond his sentence. The Immigration and Nationality Act (INA) provides that some convictions—including convictions for child abuse and certain aggravated felonies—can serve as grounds for removal. *See* 8 U.S.C. § 1227(a)(2). After Cruz was released from custody, the Department of Homeland Security charged him with removal (1) as a noncitizen convicted of "a crime of child abuse, child neglect, or child abandonment" under § 1227(a)(2)(E)(i) and (2) as an aggravated felon under § 1227(a)(2)(A)(iii). Cruz denied that he was removable and, in the alternative, asked that his removal be cancelled as a matter of discretion.

The immigration judge found that Cruz was removable as a noncitizen convicted of a crime of child abuse, child neglect, or child abandonment—which we will call "child abuse" for short—but dismissed the aggravated felony removal charge. The immigration judge declined to cancel Cruz's removal and ordered him removed.

Cruz appealed to the Board of Immigration Appeals (BIA), primarily challenging the immigration judge's finding that his D.C. conviction qualified as a crime of child abuse. The BIA agreed with the immigration judge and dismissed the appeal. But the BIA's decision failed to address Cruz's arguments that a crime of child abuse under the INA (1) applies only to completed offenses, not attempts, and (2) requires a culpable mens rea as to the victim's age, unlike D.C. Code 22-3009, which imposes strict liability as to a victim's age. Cruz petitioned this court for review, and we remanded to the BIA to address those two questions. *See Cruz v. Wilkinson*, 837 Fed. App'x 1014, 1016 (4th Cir. 2021).

3

The BIA rejected Cruz's arguments and again dismissed the appeal. Cruz petitions this court for review a second time, repeating on appeal the two arguments he raised below.

## II.

The sole issue in this appeal is whether Cruz's conviction for attempted second degree child sexual abuse under D.C. Code 22-3009 and 22-3018 qualifies as a removable crime of child abuse. This a question of law that we review de novo. *See Gomez-Ruotolo v. Garland*, 96 F.4th 670, 677 (4th Cir. 2024).

Noncitizens are removable under the INA "based on the nature of their convictions, not based on their actual conduct." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 389 (2017). Accordingly, to determine whether Cruz was convicted of a crime of child abuse, we employ a "categorical approach," looking to the statute of conviction to see whether the crime qualifies as a crime of child abuse. *Id.* In doing so, we presume that the petitioner's conviction rested upon the minimum conduct criminalized by the statute. *Id.* Cruz's attempted second degree child sexual abuse conviction is thus a crime of child abuse under § 1227(a)(2)(E)(i) only if every act criminalized by the D.C. statute would count as a crime of child abuse for purposes of the INA.

## A.

But what is a crime of child abuse under the INA? We begin, as we must, with the text of the provision itself.

The child abuse ground of deportability is part of a broader provision covering domestic violence and stalking offenses as well:

(i) Domestic violence, stalking, and child abuse

4

> Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable.

8 U.S.C. § 1227(a)(2)(E)(i). The statute does not elaborate on the meaning of "a crime of child abuse, child neglect, or child abandonment." *Id.*

The statute's structure, however, clearly evinces Congress's intent that "a crime of child abuse, child neglect, or child abandonment" should be read as a single category that encompasses the entire phrase. *See Matter of Soram*, 25 I. & N. Dec. 378, 381 (BIA 2010); *Diaz-Rodriguez*, 55 F.4th 697, 734–35 (9th Cir. 2022) (en banc); *Ibarra v. Holder*, 736 F.3d 903, 914 (10th Cir. 2013). The singular phrase "a crime" appears three times to address the three different categories of offenses covered: (1) "*a crime* of domestic violence"; (2) "*a crime* of stalking"; and (3) "*a crime* of child abuse, child neglect, or child abandonment." Moreover, the provision is listed in a subsection titled, "Domestic violence, stalking, and child abuse." This title refers to three categories of offenses that mirror the provision's three uses of the singular phrase "a crime" discussed above. The term "child abuse" in the title should thus be read as "a unitary concept," referring to the entire phrase "a crime of child abuse, child neglect, or child abandonment" in the text of the provision. *See Matter of Rivera-Mendoza*, 28 I. & N. Dec. 184, 186 (BIA 2020).

Because "a crime of child abuse, child neglect, or child abandonment" represents a single category of crimes—crimes of child abuse—the intended sweep of the term must be broad enough to encompass all three of the listed offenses: abuse, neglect, and abandonment.

The common thread between these three terms is that they create a high risk of harm to a child, either by injuring the child directly or by putting the child in a situation likely to lead to injury. Dictionaries in circulation at the time of enactment in 1996 defined "child abuse" in various ways, from intentionally injuring a child, *see* Black's Law Dictionary at 239 (6th ed. 1990), to "maltreatment of a child, esp. by beating, sexual interference, or neglect," Oxford English Dictionary at 114 (2d ed. 1989). They defined the term "child neglect" generally as "failure on the part of a parent or parental substitute to supervise a child and provide requisite care and protection." Webster's II New College Dictionary at 194 (1995). And they defined "child abandonment" generally as a "failure to communicate with or provide financial support for one's child over a period of time that shows a purpose to forgo parental duties and rights." Merriam-Webster's Dictionary of Law at 1 (1996). *See Diaz-Rodriguez*, 55 F.4th at 713–15 (providing a comprehensive review of contemporaneous dictionary definitions of child abuse, child neglect, and child abandonment).

Given these definitions, it is not necessary for a child to have been actually harmed. One can engage in abandonment or neglect by creating a substantial risk of harm to the child due to lack of supervision or protection. It is enough to have posed the threat of injury; the injury need not have occurred. Indeed, in many states, crimes of child endangerment— i.e., crimes that criminalize conduct that puts children at risk of harm without actually causing harm—are considered crimes of child abuse or neglect. *See Matter of Soram*, 25 I. & N. Dec. at 381–84; *Diaz-Rodriguez*, 55 F.4th at 720–21. And no wonder. This requisite risk of harm to a child fully effectuates Congress's "intent to 'single out those who have

6

been convicted of maltreating or preying upon children.'" *Matter of Aguilar-Barajas*, 28 I. & N. Dec. 354, 359 (BIA 2021). Thus we hold that a crime of child abuse requires an act or omission that either injures a child or creates a sufficiently high risk that a child will be harmed.

Unsurprisingly, our analysis of the crime of child abuse provision accords with the approach of the BIA. That is no accident. The agency has been "delegated a regulatory and adjudicative role in this whole area" and its "experience in the field often renders its decisions persuasive." *Gomez-Ruotolo*, 96 F.4th at 677. Our sister circuits have all held that offenses that create a sufficiently high risk that a child will be harmed qualify as crimes of child abuse. *See Florez v. Holder*, 779 F.3d 207, 212 (2d Cir. 2015) (deferring to the BIA's crime of child abuse definition); *Mondragon-Gonzalez v. Att'y Gen.*, 884 F.3d 155, 159 (3d Cir. 2018) (same); *Garcia v. Barr*, 969 F.3d 129, 134 (5th Cir. 2020) (same); *Diaz-Rodriguez*, 55 F.4th at 732; *Bastias v. U.S. Att'y Gen.*, 42 F.4th 1266, 1273–75 (11th Cir. 2022) (same); *see also Zarate-Alvarez v. Garland*, 994 F.3d 1158, 1164–65 (10th Cir. 2021) (deferring in relevant part).

## B.

Cruz argues that his conviction for attempted second degree child sexual abuse does not fit for two reasons. First, he argues that attempt offenses cannot satisfy the actus reus requirement because Congress failed to expressly include attempts in the statute. Second, he argues that statutes that impose strict liability as to a victim's age cannot satisfy the mens rea requirement because they do not require a culpable mental state. We address each argument in turn.

7

1.

In arguing that a crime of child abuse does not cover attempts, Cruz overlooks the fact that courts have defined a crime of child abuse broadly to include not only crimes that require harm to a child, but also those "that require a 'likelihood or reasonable probability that a child will be harmed.'" *Bastias*, 42 F.4th at 1271–72; *Florez*, 779 F.3d at 212. This definition logically extends to attempt offenses. Here is how: Take an offense that no one disputes causes an actual physical injury to a child, say an offense of physically beating and bruising a child. If a person attempts to physically abuse the child, say by throwing a heavy object at the head of that child, he has created at least a "likelihood" or "reasonable probability" that the child will be harmed, even if he misses. *Bastias*, 42 F.4th at 1271–72. A person who attempts to harm a child has necessarily increased the chances that harm will befall that child. To be sure, it cannot be the case that any increase in the risk of harm, no matter how infinitesimal, can count. Only a reasonable probability of harm will suffice. The question, then, is whether an attempt offense requires an actor to come close enough to completing an offense to constitute a reasonable probability that he will do so.

It follows that an attempt offense qualifies as a crime of child abuse if the underlying offense qualifies as a crime of child abuse and the relevant jurisdiction's definition of attempt requires a likelihood or reasonable probability of harm to a child. *See Matter of Rivera-Mendoza*, 28 I. & N. Dec. at 186 (noting a similar approach to determining whether the risk of harm required by a child endangerment statute is sufficient to bring an offense within the definition of child abuse under the INA). We must therefore analyze Cruz's D.C. conviction to determine whether it meets this standard.

8

D.C. Code 22-3009 makes it a crime for anyone "being at least 4 years older than a child" to "engage[] in sexual contact with that child or cause[] that child to engage in sexual contact." D.C. Code 22-3018 criminalizes attempts of the same. The Code defines "child" as "a person who has not yet attained the age of 16 years." D.C. Code § 22-3001(3). And "sexual contact" is defined as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." D.C. Code § 22-3001(9).

The minimum conduct criminalized by this statute is touching the private areas of a fifteen-year-old child over the child's clothing with an object and with the intent to gratify any person's sexual desire. Even the least culpable offense, then, involves an intentional mens rea as to the defendant's conduct (as one cannot intend to "gratify the sexual desire of any person" unintentionally). *See Jimenez-Juarez v. Holder*, 635 F.3d 1169, 1171 (9th Cir. 2011) ("Acting with the purpose of gratifying a sexual desire is an intentional act, which exceeds the minimum mens rea required under the federal definition."). And the least culpable conduct involves touching, in some way, a child's private areas. It is well-established that touching a child's private areas for sexual gratification causes actual harm to a child. *See, e.g.*, *id.* (finding that "touching the sexual or other intimate parts of the victim" satisfies the actus reus requirement). We thus find that the substantive offense underlying Cruz's conviction qualifies as a crime of child abuse.

The question remains whether an *attempt* to commit such a crime qualifies as well. By definition, attempts are incomplete crimes, meaning a child might not have actually

9

been harmed by the conduct of the substantive offense. The question is whether an attempt under D.C. law poses a sufficient risk of harm to a child to bring it into the ambit of a crime of child abuse. We find that it does.

To convict a defendant for attempt in D.C., the government must prove that the defendant "(1) intended to commit the crime, and (2) committed an overt act towards completion of the crime that (3) came within 'dangerous proximity of completing the crime.'" *Nkop v. United States*, 945 A.2d 617, 620 (D.C. 2008). A defendant comes within "dangerous proximity" of completing a crime where, "except for some interference, a defendant's overt acts would have resulted in commission of the completed crime, or where the defendant has taken a substantial step toward commission of the crime." *Hailstock v. United States*, 85 A.3d 1277, 1282–83 (D.C. 2014) (internal citations omitted).

Coming within "dangerous proximity" of completing a crime of child abuse means that the defendant's actions posed, at the very least, a reasonable probability of harm to the child. Put another way, a defendant's substantial step toward committing a crime of child abuse certainly creates a reasonable probability that he will succeed in causing harm to that child. Indeed, it would cut against the very purpose of the child abuse ground of removability—and, for that matter, commonsense—to reward defendants who come within dangerous proximity to causing actual harm to a child but are stopped by the pure happenstance of some external interference.

Cruz, however, points out that Congress did not expressly include attempt offenses, even though it has done so elsewhere in the statute. That, according to Cruz, is conclusive evidence that Congress meant for them to be excluded.

10

But Cruz takes too narrow a view of statutory interpretation. Analyzing a statute requires more than reading the words of a provision in a vacuum, it requires reading the words in the context of the statute as a whole. *See King v. Burwell*, 576 U.S. 473, 486 (2015). Here that context indicates that Congress did not intend its silence as exclusion.

It is relevant here to examine the approach Congress took in defining which criminal offenses constituted grounds for removal under § 1227(a)(2). When it referred to convictions under specific laws that it intended to make grounds for removal, it generally used the word "violation" and described the relevant statute. On the other hand, when it intended to make broad categories of offenses grounds for removal, it referred generally to "crimes of" such categories.

Though Cruz is right that Congress expressly included attempts in certain grounds for removal, it often did so in grounds for removal *for violations of specific laws*. *See* 8 U.S.C. § 1227(a)(2)(B)(i) ("a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21)"); *id.* § 1227(a)(2)(C) ("attempting or conspiring to purchase . . . any weapon . . . (as defined in section 921(a) of Title 18) in violation of any law"); *id.* § 1227(a)(2)(D) ("conspiracy or attempt to violate" various federal statutes); *see also id.* § 1227(a)(3)(B)(ii)–(iii) ("attempt or a conspiracy to violate" various federal statutes). That makes good sense. Where the underlying statutes constitute substantive offenses, Congress's omission of the word attempt might imply attempts were not included.

11

Not so with the "crime of" provisions. The crime of child abuse provision—and the other "crime of" provisions—are generally broader and make noncitizens removable for entire categories of crimes, as opposed to violations of particular criminal statutes. Unlike the "violation" offenses, Congress generally did not include the word "attempt" in the "crime of" grounds of removal. Instead, where Congress has used this "crime of" language, it has either expressly defined the categories as including attempts in other provisions, *e.g.*, 8 U.S.C. § 1227(a)(2)(E)(i) ("crime of domestic violence"), or left the terms open to broad interpretation.

Indeed, we recently rejected an argument that Congress's silence as to whether attempts were included in a "crime of" offense was determinative of its intent to exclude them. Like a crime of child abuse, Congress did not define the term "a crime involving moral turpitude" in the "Crimes of moral turpitude" or "Multiple criminal convictions" grounds for removal. 8 U.S.C. § 1227(a)(2)(A)(i)–(ii). Nonetheless, we interpreted this category of crimes to include attempts. *See Gomez-Ruotolo*, 96 F.4th at 682–83. Here too it made little sense to read Congress's decision to leave a broadly worded term open-ended as somehow evincing an intention to narrow its scope.

Reading the crime of child abuse provision in context, we reject Cruz's argument that it does not apply to attempts. Indeed, to read it as Cruz contends would blast a hole in Congress's own attempt to broadly protect children from those who set out to abuse them.

2.

Cruz also argues that the D.C. statute, which imposes strict liability as to a victim's age, does not categorically match a crime of child abuse under federal law. He insists that

12

the generic federal crime of child abuse requires knowledge or at least recklessness as to the victim's age. As a result, any crime that imposes strict liability as to a victim's age, which the D.C. statute once again does, fails to meet the mens rea requirement. But the problem with that argument is that Cruz misunderstands the mens rea requirement for a crime of child abuse under the INA.

A crime of child abuse requires a culpable mens rea and an actus reus of conduct that either injures a child or creates a sufficiently high risk that a child will be harmed. *See generally Matter of Aguilar-Barajas*, 28 I. & N. Dec. at 361. Thus, there are three elements to any crime of child abuse: (1) a culpable mental state and (2) an act or omission that causes harm or creates a reasonable probability of harm (3) to a child.

Although a crime of child abuse requires a culpable mental state, this mens rea requirement "applies only to the act, not the child's age." *Garcia*, 969 F.3d at 135–36; *see also Acevedo v. Barr*, 943 F.3d 619, 621 (2d Cir. 2019) (holding that the mens rea requirement "applies to the conduct at issue, not to the age of the victim" in the context of sexual abuse of a minor, 8 U.S.C. § 1101(a)(43)(A)); *Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 866–67 (3d Cir. 2020) (same); *Bedolla-Zarate v. Sessions*, 892 F.3d 1137, 1141 (10th Cir. 2018) (same).

We thus reject Cruz's invitation to inject into the federal generic crime of child abuse a mens rea requirement as to the victim's age. To do so would immunize a stunning array of intentional and abusive sexual misconduct. As the Third Circuit has noted, "to impose a requirement that the perpetrator know the victim's age would exclude from the federal generic offense a swath of sexual conduct unlawful under many state laws" and

13

thereby undermine Congress's goal in enacting the statute: to protect children. *Grijalva Martinez*, 978 F.3d at 866.

## III.

It is that goal of protecting children that Cruz's arguments would fatally undermine. We have reviewed with care his challenges to his removal and find them unavailing. For the foregoing reasons, the petition for review is denied.

*PETITION DENIED*