# Matter of D. RODRIGUEZ, Respondent

*Decided August 27, 2024*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) A conviction for an attempt to commit a crime may constitute a crime of child abuse, child neglect, or child abandonment under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2018).

(2) The respondent's conviction for attempted injury to a child under sections 15.01(a) and 22.04(a)(1) of the Texas Penal Code renders him removable under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), for having committed a crime of child abuse.

FOR THE RESPONDENT: Christopher R. Carlston, Esquire, Dallas, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Joshua S. Levy, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Deputy Chief Appellate Immigration Judge; PETTY, Appellate Immigration Judge. Concurring Opinion: CLARK, Appellate Immigration Judge.

PETTY, Appellate Immigration Judge:

The respondent was convicted in a Texas court of attempted injury to a child and found removable for having committed a crime of child abuse, child neglect, or child abandonment. On appeal from the Immigration Judge's decision, he challenges his removability on two grounds. First, he contends that a crime of child abuse does not encompass attempts because they are not expressly included in the statutory language. Second, he claims that attempted injury does not require a sufficient likelihood of harm to qualify as a crime of child abuse. We reject both of the respondent's arguments regarding removability. We further conclude that the Immigration Judge properly denied cancellation of removal in the exercise of discretion. The appeal will be dismissed.

# I.  BACKGROUND

The respondent was convicted in 2018 of attempted injury to a child under sections 15.01(a) and 22.04(a)(1) of the Texas Penal Code.[1]   The Immigration Judge found that the conviction was based on, among other misconduct, having digitally penetrated a 10-year-old family member.  The respondent was initially arrested for sexual assault of a child; he later pleaded guilty to attempted injury to a child.  He was sentenced to 350 days' imprisonment, which was probated for 5 years.  Based on this conviction, the Department of Homeland Security ("DHS") charged the respondent with removability under section 237(a)(2)(E)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(E)(i) (2018), as a noncitizen convicted of a crime of child abuse, child neglect, or child abandonment.

The respondent moved to terminate his removal proceedings, and the Immigration Judge denied the motion in a written decision.[2]   The respondent also applied for cancellation of removal for certain permanent residents under section 240A(a) of the INA, 8 U.S.C. § 1229b(a) (2018), which the Immigration Judge denied as a matter of discretion.  The Immigration Judge considered the respondent's 18-year residence in the United States, his 4 children residing in the country, and his successful operation of a business that at one point employed as many as 15 people, but concluded that these positive factors were outweighed by the respondent's criminal conduct, including his conviction for attempted injury to a child and his arrests for domestic violence and driving while intoxicated with an open container.  The Immigration Judge therefore ordered the respondent removed.  The respondent appeals, challenging both his removability and the denial of relief.  DHS has filed a response in opposition to the appeal.

# II.  DISCUSSION

## A.  Removability

Section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), provides that a noncitizen is removable from the United States if, at any time after admission, he or she is convicted of a "crime of child abuse, child neglect, or child abandonment."   Congress did not define this term.  *Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 508 (BIA 2008); *accord Garcia v. Barr*, 969 F.3d 129, 133 (5th Cir. 2020).  We have interpreted it "broadly to

---

[1]  It is not disputed that the offense of serious bodily injury to a child under section 22.04(a)(1) of the Texas Penal Code underlies the respondent's conviction for attempt.

[2]  The Immigration Judge subsequently denied the respondent's motion to reconsider this decision.

mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512. To determine whether the respondent's offense is a "crime of child abuse"[3] under section 237(a)(2)(E)(i), we employ the categorical approach. *Matter of Aguilar-Barajas*, 28 I&N Dec. 354, 356 (BIA 2021). We must disregard the respondent's actual conduct and focus instead on the elements of the offense and the minimum conduct that has a realistic probability of being prosecuted under the statute he was convicted of violating. *Id.*

## 1. The Language of Section 237(a)(2)(E)(i) Does Not Exclude Attempts

The respondent first contends that section 237(a)(2)(E)(i) encompasses only completed offenses and therefore cannot include his conviction for attempted injury to a child. He maintains that because section 237(a)(2)(E)(i) is silent with respect to attempts—whereas other provisions in section 237 expressly reference attempts—the absence of attempts in section 237(a)(2)(E)(i) must have been deliberate.

The respondent's argument is based on the principle that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted). But "[c]ontext counts, and it is sometimes difficult to read much into the absence of a word that is present elsewhere in a statute." *Bartenwerfer v. Buckley*, 598 U.S. 69, 78 (2023). In particular, the principle described in *Russello* loses force as the statutory provisions being compared move apart from each other in time, space, subject matter, and structure.

First, with respect to time of enactment, the five instances in which the word "attempt" is found in section 237 were created in three separate acts of Congress passed in 1990, 1991 and 1994.[4] They were all enacted prior to the

---

[3] For brevity, we will use the phrase "crime of child abuse" to refer to the Board's unitary definition of a "crime of child abuse, child neglect, or child abandonment." *See Matter of Aguilar-Barajas*, 28 I&N Dec. 354, 355 & n.3 (BIA 2021); *Matter of Soram*, 25 I&N Dec. 378, 381 (BIA 2010).

[4] The word "attempt" was added to what is now section 237(a)(2)(B)(i) of the INA, 8 U.S.C. § 1227(a)(2)(B)(i), by the Immigration Act of 1990, Pub. L. No. 101-649, § 508(a), 104 Stat. 4978, 5051. What is now section 237(a)(2)(D) of the INA, 8 U.S.C. § 1227(a)(2)(D), was amended in a similar fashion by the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 307(h)(7), 105 Stat. 1733, 1756. Finally, what are now sections 237(a)(2)(C), (3)(B)(ii), and (3)(B)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(C), (3)(B)(ii), (iii), were amended by the

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Division C of Pub. L. No. 104-208, § 350(a), 110 Stat. 3009-546, 3009-639, which created section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i). IIRIRA and the three preceding acts were each passed by different Congresses. Thus, "this is not a case where Congress has 'include[d] particular language in one section of a statute but omit[ted] it in another section of *the same Act.*'" *Johnson v. United States*, 559 U.S. 133, 143 (2010) (alteration in original) (quoting *Russello*, 464 U.S. at 23).

Next, with respect to space or relative position, *Russello* explained that if two provisions in "the same Act" are adjacent to each other, that can lend support to a negative inference. 464 U.S. at 23 (citation omitted) ("Had Congress intended to restrict § 1963(a)(1) to an interest in an enterprise, it presumably would have done so expressly as it did *in the immediately following subsection* (a)(2)." (emphasis added)); *see also Fedorenko v. United States*, 449 U.S. 490, 512–13 (1981) (comparing adjacent provisions and concluding that because voluntariness was specifically included in one provision but not the other, the omission must be understood as intentional). But here, no relevant adjacent (or even proximate) provision was enacted in IIRIRA. Additionally, although section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), appears near provisions that explicitly include attempts, nothing in the language of section 237(a)(2)(E)(i) suggests it was drafted in response to other provisions in section 237(a)(2) and (3) that already existed.[5]

Third, with respect to subject matter, section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), addresses crimes of domestic violence, stalking, and child abuse, child neglect, and child abandonment. The provisions in section 237 that expressly include attempts address removability on disparate grounds—including controlled substances, firearms offenses, and various national security offenses—which are both unlike each other and unlike crimes of child abuse. *See* INA § 237(a)(2)(B)(i), (C), (D), (3)(B)(ii), (iii), 8 U.S.C. § 1227(a)(2)(B)(i), (C), (D), (3)(B)(ii), (iii).

This is a step further removed from *Russello* and *Fedorenko*, which concerned two related provisions addressing the scope of criminal forfeiture under the Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 901(a), 84 Stat. 922, 943 (codified at 18 U.S.C. § 1963), and two exclusion criteria for wartime conduct under the Displaced Persons Act of 1948,

---

Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 203(b), 108 Stat. 4305, 4311.

[5] We note that title 8 of the United States Code, entitled "Aliens and Nationality," is a nonpositive law title. *See Mendoza-Linares v. Garland*, 51 F.4th 1146, 1149 n.1 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 1392 (2024) (mem.); *see also* 1 U.S.C. § 204 note (2018) (listing titles of the United States Code that have been enacted into positive law).

Pub. L. No. 80-774, § 2(b), 62 Stat. 1009, 1009, respectively. *See Russello*, 646 U.S. at 23–24; *Fedorenko*, 449 U.S. at 509–12. The difference in subject matter weighs against drawing a negative inference. *See Martin v. Hadix*, 527 U.S. 343, 356 (1999) ("Because [two adjacent sections] address wholly distinct subject matters, the . . . negative inference does not arise from the silence of [one of the sections]."); *see also Young v. United States*, 535 U.S. 43, 52 (2002) (concluding that the Court "would draw no negative inference from the presence of an express tolling provision in [a provision involving nonbankruptcy courts] and the absence of one in [a provision involving bankruptcy courts]").

Finally, with respect to common design or parallel structure, the *Russello* presumption "grows weaker with each difference in the formulation of the provisions under inspection." *See City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 435–36 (2002). The negative inference from the absence of a statutory phrase is most persuasive if the omission is the sole difference in the expression of a general rule. *Id*. at 435. The respondent has not identified any provision in section 237 that is structurally parallel to subsection (a)(2)(E)(i), and we are aware of none.[6] *See Clay v. United States*, 537 U.S. 522, 529–30 (2003) (declining to apply *Russello* where the provisions at issue are not parallel).

Under these circumstances, we conclude it would be improper to infer from silence that Congress deliberately intended to exclude attempts from section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i). *See Cruz v. Garland*, 101 F.4th 361, 367–68 (4th Cir. 2024) (explaining that the "context [of section 237(a)(2)(E)(i)] indicates that Congress did not intend its silence [regarding attempts] as exclusion"). As we explained in *Matter of Vo*, 25 I&N Dec. 426, 430 (BIA 2011), "the 'attempt' language was added to the various sections of the [INA] at different times, [so] its inclusion [elsewhere] does not represent a unified design to effectuate a single intent." Congress may have explicitly added the attempt language to certain sections "as a point of special emphasis to remove any doubt that those sections included such offenses." *Matter of Vo*, 25 I&N Dec. at 429; *see also Romo v. Barr*, 933 F.3d 1191, 1197 (9th Cir. 2019) ("[I]t is not unusual to see redundancy occur in clarifying enactments, which do run the risk of introducing other problems while focusing on the task of making sure that a particular problem does not arise." (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992))).

---

[6] The phrase "abuse, neglect, [or] abandonment" is also found in section 101(a)(27)(J)(i) of the INA, 8 U.S.C. § 1101(a)(27)(J)(i) (2018), but that provision defines eligibility for special immigrant juvenile status; it is not a ground of removability. The absence of "attempt" in that provision is hardly surprising as it does not describe a class of criminal offenses, but rather pertains to reasons why reunification with a parent is not viable.

As the United States Court of Appeals for the Fifth Circuit recently explained, silence does not always imply exclusion. *See United States v. Vargas*, 74 F.4th 673, 686 (5th Cir. 2023) (en banc) (noting that "[n]ot mentioning something does not necessarily mean excluding it" and that "[t]he context must justify that inference"), *cert. denied*, 144 S. Ct. 828 (2024). The Supreme Court of the United States teaches that drawing an inference from silence is permissible where there is a "statutory listing or grouping" and the "items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (citation omitted). Because section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), does not include a list or group containing inchoate offenses other than attempts, the wording of the statute does not suggest that attempts have been deliberately excluded. *See Vargas*, 74 F.4th at 686–87 (concluding that section 4B1.2(b) of the United States Sentencing Guidelines permissibly includes attempts though not expressly listed).

Although section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), uses the phrase "crime of child abuse, child neglect, or child abandonment," we have interpreted these terms as denoting a single "unitary concept,"[7] rather than listing separate, exclusive categories. *Matter of Soram*, 25 I&N Dec. 378, 381 (BIA 2010); *see also Cruz*, 101 F.4th at 365. Even if we were to treat these terms as independent of each other, "attempt" would not fit there either. Just as the Fifth Circuit explained with respect to conspiracy, an attempt is not "just another" type of harm to a child, but rather something "conceptually different from the listed acts." *Vargas*, 74 F.4th at 687. One can attempt any of them. *Id.*

Lastly, our conclusion is consistent with Congress' stated intent "to expand the criminal grounds of deportability in general and to create a 'comprehensive statutory scheme to cover crimes against children' in particular." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 508–09 (quoting *Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991, 994 (BIA 1999)); *see also Cruz*, 101 F.4th at 365 (stating that it was Congress' "intent to 'single out those who have been convicted of maltreating or preying upon children'" (citation omitted)). Excluding attempt offenses from the reach of section 237(a)(2)(E)(i) would preclude removal of convicted offenders who tried,

---

[7]   This is because States may use inconsistent or overlapping language to denote the same acts. As we explained, this definition "ensures uniformity in the application of section 237(a)(2)(E)(i), given that endangering a child can reasonably be viewed as either abuse or neglect, and that some States include child endangerment in their definition of 'child abuse,' while a number of others consider it 'child abuse or neglect.'" *Matter of Soram*, 25 I&N Dec. at 381.

but failed, to abuse children. *Cf. Quarles v. United States*, 587 U.S. 645, 654 (2019) (rejecting a narrow generic definition of burglary that would have "defeat[ed] Congress' stated objective"). We therefore conclude that although attempts are not expressly included in the statutory language, a conviction for an attempt to commit a crime may constitute a crime of child abuse under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i).[8] *See Cruz*, 101 F.4th at 368 (holding that in the crime of child abuse context, just as in the crime of moral turpitude context, "it ma[kes] little sense to read Congress's decision to leave a broadly worded term open-ended as somehow evincing an intention to narrow its scope").

2. Attempted Injury to a Child Under Sections 15.01(a) and 22.04(a)(1) of the Texas Penal Code Is a Crime of Child Abuse

We have defined "child abuse" in part as "an act or omission that constitutes maltreatment of a child." *Matter of Soram*, 25 I&N Dec. at 383 (quoting *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512). Whether an attempt to injure ultimately results in injury is immaterial to the danger posed to the child at the moment the attempt is made. As the Fifth Circuit has acknowledged, "luck plays a role in whether people engaging in equally blameworthy conduct succeed[]." *United States v. Hoffman*, 901 F.3d 523, 559 (5th Cir. 2018) (citation omitted). "[I]t would cut against the very purpose of the child abuse ground of removability—and, for that matter, commonsense—to reward defendants who come within dangerous proximity to causing actual harm to a child but are stopped by the pure happenstance of some external interference." *Cruz*, 101 F.4th at 367;

---

[8] We have previously held, albeit in other contexts, that attempts are implicitly included in various grounds of removability, even where not expressly stated. *See, e.g.*, *Matter of Vo*, 25 I&N Dec. at 429 (crime involving moral turpitude); *Matter of Bronsztejn*, 15 I&N Dec. 281, 283 (BIA 1974) (collecting authority), *aff'd*, 526 F.2d 1290 (2d Cir. 1975). This approach to attempts is consistent with our approach to inchoate offenses more generally. *See, e.g.*, *Matter of Al Sabsabi*, 28 I&N Dec. 269, 272–73 (BIA 2021) (conspiracy); *Matter of Beltran*, 20 I&N Dec. 521, 527 (BIA 1992) (solicitation); *Matter of Del Risco*, 20 I&N Dec. 109, 110 (BIA 1989) (facilitation). Although we previously concluded that a provision that expressly included conspiracies but not attempts should be read to exclude the latter, we relied in that case on statutes that amended the surrounding provisions to include attempts, presuming that Congress' decision not to amend the relevant provision demonstrated an intent to exclude attempts. *See Matter of Hou*, 20 I&N Dec. 513, 520 (BIA 1992), *superseded by statute*, Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 203(b), 108 Stat. 4305, 4311 (codified as amended at 8 U.S.C. § 1251(a) (1994)). This reasoning has been called into question by subsequent Supreme Court case law. *See Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) ("Later enacted laws . . . . do not declare the meaning of earlier law.").

*see also United States v. Farley*, 607 F.3d 1294, 1337 (11th Cir. 2010) ("[T]hose who unsuccessfully attempt to commit crimes are 'no less blameworthy, only less skillful' than those who succeed." (quoting *Rummel v. Estelle*, 445 U.S. 263, 276 (1980))). Attempting to injure a child is therefore "an act or omission that constitutes maltreatment of a child." *Matter of Soram*, 25 I&N Dec. at 383.

To demonstrate removability for attempted injury to a child, DHS must make two showings: First, it must show that the substantive crime attempted is a categorical match with our definition of a "crime of child abuse." *See Matter of Aguilar-Barajas*, 28 I&N Dec. at 356. Second, it must show that the State definition of attempt is a categorical match for the Federal definition of attempt, which requires a "substantial step" toward the completion of a substantive offense. *United States v. Hansen*, 599 U.S. 762, 775 (2023); *cf. Matter of S-I-K-*, 24 I&N Dec. 324, 326–27 (BIA 2007) (holding that to be removable for having committed a conspiracy to commit fraud, the respondent's conviction for conspiracy had to be a categorical match to the generic definition of conspiracy). Both of these elements must categorically match their generic counterparts in order for an attempted injury to a child to constitute a crime of child abuse.[9] Taken together, attempted injury to a child constitutes a crime of child abuse under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), where a substantial step has been taken toward the completion of a categorically abusive act.

Applying this rule, we conclude that attempted injury to a child under sections 15.01(a) and 22.04(a)(1) of the Texas Penal Code is a crime of child abuse under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i). Section 22.04(a)(1) states that "[a] person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual . . . serious bodily injury." Tex. Penal Code Ann. § 22.04(a)(1) (West 2018). The Fifth Circuit has concluded that section 22.04(a) is divisible with respect to victim class and that a conviction for the completed offense of bodily injury to a child under section 22.04(a)(3) of the Texas Penal Code is a crime of child abuse. *See Monsonyem v. Garland*, 36 F.4th 639, 643–45 (5th Cir. 2022); *see also Matter of Velazquez-Herrera*, 24 I&N Dec. at 512 ("At a minimum, th[e] definition [of child abuse] encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight."). The Fifth Circuit has also concluded that

---

[9]   We leave for another day, in a case presenting the question, under what circumstances attempted *endangerment* may constitute a crime of child abuse. The offense at issue in this case is not an endangerment crime and this decision does not alter the Board's established legal framework for evaluating a respondent's removability for endangerment crimes as crimes of child abuse.

Texas' definition of attempt under section 15.01(a) of the Texas Penal Code is a categorical match for the Federal definition. *See United States v. Sanchez*, 667 F.3d 555, 563–66 (5th Cir. 2012).

The Immigration Judge found, based on the respondent's conviction record, that he was convicted of attempting to injury a child. The respondent does not contend that Texas' definition of a "child" is overbroad, and we note that this statute is limited to victims 14 years of age and younger, which is narrower than the generic definition. *Compare* Tex. Penal Code Ann. § 22.04(c)(1), *with Matter of Velazquez-Herrera*, 24 I&N Dec. at 512. Accordingly, the respondent's conviction for attempted injury to a child under sections 15.01(a) and 22.04(a)(1) of the Texas Penal Code renders him removable under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), for having committed a crime of child abuse.

### 3. The "Reasonable Probability" or "Likelihood of Harm" Analysis Does Not Apply to Injury-Type Statutes

The respondent submits that a "crime of child abuse" requires a categorical "reasonable probability" or "likelihood of harm" to a child, and because one can be convicted of attempt without any completed harm whatsoever, attempts necessarily fail to meet this standard. We reject this argument because the "reasonable probability" inquiry does not apply to injury-type offenses, including the statute the respondent was convicted of violating.

In *Matter of Soram*, 25 I&N Dec. at 383, we held that "our definition of a crime of child abuse is sufficiently broad to encompass endangerment-type crimes." We later cautioned that "there are child *endangerment* statutes that do not require a sufficiently high risk of harm to a child to meet the definition of child abuse." *Matter of Mendoza Osorio*, 26 I&N Dec. 703, 711 (BIA 2016) (emphasis added). To determine whether an endangerment crime is categorically abusive, we consider whether it "require[s] proof of a 'likelihood' or 'reasonable probability' that a child will be harmed." *Matter of Rivera-Mendoza*, 28 I&N Dec. 184, 187 (BIA 2020). Here, the respondent was convicted of attempting to *injure* a child—not to endanger one. *See* Tex. Penal Code Ann. §§ 15.01(a), 22.04(a)(1) (West 2018). The additional likelihood-of-harm analysis is therefore inapplicable.

### B. Cancellation of Removal

In denying the respondent's application for cancellation of removal, the Immigration Judge balanced the respondent's equities with the negative considerations in this case. *See Matter of C-V-T-*, 22 I&N Dec. 7, 11

(BIA 1998). Specifically, the Immigration Judge concluded that the respondent's 18-year residence, his four children, and his operation of a successful business employing over a dozen people were outweighed by his conviction for attempted injury to a child and his arrests for domestic violence and driving while intoxicated with an open container.

The respondent argues on appeal that in denying his application as a matter of discretion, the Immigration Judge improperly considered the police report describing the conduct that led to his conviction. Specifically, he contends that the Immigration Judge's weighing of the evidence was contrary to *Matter of Arreguin*, 21 I&N Dec. 38, 42 (BIA 1995), in which we were "hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein." *See also Rosa v. Garland*, No. 22-1523, 2024 WL 3841501, *15 (1st Cir. Aug. 16, 2024) (remanding to the Board to consider what qualifies as sufficient corroborating evidence under *Matter of Arreguin* and whether the corroboration can come from the police report itself).

The arrest report in *Matter of Arreguin*, 21 I&N Dec. at 42, was based on uncorroborated statements of law enforcement officers and the allegations in those reports did not result in a conviction. Here, however, the police report is not limited to an officer's personal observations or opinions, but also collects statements that the victim made to her therapist, her mother, and a forensic interviewer, as well as statements allegedly made by the respondent himself to the victim's mother. The respondent has not challenged the veracity of these statements. Moreover, unlike the arrest in *Matter of Arreguin*, which did not lead to a conviction, the allegations here ultimately did result in a conviction, albeit to a lesser offense than the original charge. In any event, consideration of arrest or other police reports in discretionary determinations is highly fact dependent. Both before and after *Matter of Arreguin*, we have held that police reports and other reliable evidence concerning the circumstances of an arrest may properly be considered in assessing whether a respondent merits discretionary relief, even if the arrest did not result in a conviction. *See, e.g.*, *Matter of D-A-C*, 27 I&N Dec. 575, 579–80 (BIA 2019); *Matter of Teixeira*, 21 I&N Dec. 316, 321 (BIA 1996); *Matter of Mendez*, 21 I&N Dec. 296, 303 n.1 (BIA 1996); *Matter of Grijalva*, 19 I&N Dec. 713, 722 (BIA 1988). Accordingly, we discern no legal error in the Immigration Judge's consideration of the police report.

Having considered the Immigration Judge's findings of fact, we agree with his conclusion that the respondent's criminal conduct outweighs his positive equities. *See Matter of C-V-T-*, 22 I&N Dec. at 11. We therefore affirm the Immigration Judge's denial of the respondent's application for cancellation for removal in the exercise of discretion.

**ORDER:** The appeal is dismissed.

*CONCURRING OPINION:* Katharine E. Clark, Appellate Immigration Judge

I concur in the outcome of this case, but I write separately to express my view that the analytical framework set forth in the majority opinion would not apply to attempted child endangerment convictions.

I agree with the majority opinion that the relevant statutory framework does not per se exclude attempt offenses from consideration as crimes of child abuse. Like the majority, I acknowledge that the word "attempt" does not appear in section 237(a)(2)(E)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(E)(i) (2018), as it does in other subparagraphs of section 237(a)(2) of the INA, 8 U.S.C. § 1227(a)(2). Nor is attempt expressly incorporated by reference, as it is elsewhere in the statute. *See* INA § 101(a)(43)(U), 8 U.S.C. § 1101(a)(43)(U) (2018). While I perceive the interpretive question as being closer than the majority sees it, I ultimately agree with the majority's reasoning that the statutory structure, subject matter, and legislative history of section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), do not, per se, exclude attempt offenses.[1]

I also agree with the majority that *Matter of Soram*, 25 I&N Dec. 378 (BIA 2010), and *Matter of Mendoza Osorio*, 26 I&N Dec. 703 (BIA 2016), do not bind us in cases that do not involve child endangerment convictions. Indeed, I write separately to express my view that the question in attempted endangerment cases should be whether the minimum conduct necessary for a conviction of attempted endangerment creates at least "a *reasonable probability* that the child's life or health *will be* endangered." *Matter of Soram*, 25 I&N Dec. at 384 (quoting *People v. Hoehl*, 568 P.2d 484, 486 (Colo. 1977)). That is, the *Matter of Soram* likelihood-of-harm framework should be applied to the "attempted endangerment" conviction as a whole, not merely to the underlying substantive offense of endangerment. In other words, and consistent with our endangerment case law, an attempt to commit a child endangerment offense could qualify as a categorical crime of child abuse only if the act constituting a substantial step toward the commission of the underlying offense creates "a 'likelihood' or 'reasonable probability' that a child will be harmed." *Matter of Rivera-Mendoza*, 28 I&N Dec. 184, 187 (BIA 2020).

I would take this approach because attempted endangerment—unlike attempted injury—does not involve inherent danger to the child at the time the attempt is made. At most, attempted endangerment involves a substantial step toward the creation of danger at some point in the future, whether or not that danger ever comes to pass. Because section 237(a)(2)(E)(i) of the INA,

---

[1]  To the extent that the majority reaches this conclusion in part by reasoning that title 8 of the United States Code is a nonpositive law title, I would not rely on such reasoning.

8 U.S.C. § 1227(a)(2)(E)(i), targets convicted conduct "that impairs a child's physical or mental well-being," I would not expand it further to include convictions that require no showing of actual risk to a child. *Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 512 (BIA 2008). Therefore, rather than simply stating that we are not addressing attempted endangerment, I would specifically limit the holding of this opinion to attempted injury convictions.[2]

This limitation would be especially timely because it appears likely that the courts of appeals will be revisiting our endangerment case law in the coming months. The Supreme Court of the United States recently granted certiorari, vacated two published decisions, and remanded proceedings to the United States Courts of Appeals for the Ninth and Eleventh Circuits in cases where those courts afforded deference to our child endangerment case law under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Diaz-Rodriguez v. Garland*, No. 22-863, 2024 WL 3259656 (Jul. 2, 2024) (mem.), *vacating* 55 F.4th 697 (9th Cir. 2022) (en banc); *Bastias v. Garland*, No. 22-868, 2024 WL 3259654 (Jul. 2, 2024) (mem.), *vacating Bastias v. U.S. Att'y Gen.*, 42 F.4th 1266 (11th Cir. 2022).

The Supreme Court indicated that its orders were entered in light of its holding in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), which overruled *Chevron*. *Loper Bright* does not vacate our precedent decisions retroactively, and the Supreme Court's orders in *Diaz-Rodriguez* and *Bastias* do not address the merits of the previous holdings of the Ninth and Eleventh Circuits. *See Henry v. City of Rock Hill*, 376 U.S. 776, 777 (1964) (clarifying that a Supreme Court order granting certiorari, vacating judgment, and remanding to the lower court was not a "final determination on the merits" but was an indication that an intervening Supreme Court decision required "re-examination of the case"). However, because the

---

[2] The majority indicates that this decision does not alter the Board's established legal framework for evaluating a respondent's removability for endangerment crimes as crimes of child abuse. I hope that proves to be correct. However, the majority's framework establishes a simple formula: if the underlying crime is one of child abuse, and the attempt offense matches the federal definition, then the attempted crime is a crime of child abuse. Where the underlying crime is one of child endangerment, the majority's framework would require a finding of removability even where no increased risk has come to pass. For instance, if the majority's formula were applied to an underlying crime of child endangerment, a noncitizen could be found removable for taking a substantial step toward "abandoning [a child] in a vehicle," *Matter of Soram*, 25 I&N Dec. at 385, or leaving a child alone in a bus, *Matter of Mendoza Osorio*, 26 I&N Dec. at 709, perhaps by merely stepping out of the car or moving toward the door of the bus without the child. In these situations, where the act of leaving the child was never completed, I would find any theoretical increased risk to be insufficient to rise above "a mere possibility or potential for harm." *Matter of Rivera-Mendoza*, 28 I&N Dec. at 187.

vacatur of the Ninth and Eleventh Circuits' decisions in *Diaz-Rodriguez* and *Bastias*, respectively, has placed our child endangerment case law into some degree of flux, I would specifically limit our holding today to attempted injury convictions.